NORWAY WATER DISTRICT, PETITIONER,
*vs.*
NORWAY WATER COMPANY.

Oxford.   Opinion, February 23, 1943.

*Albert J. Stearns,*

*Locke, Campbell & Reid,* for the petitioner.

*Merrill & Merrill,* by *Edward F. Merrill,* for respondent.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J.   The Norway Water District was chartered by c. 55, P. & S. Laws of Maine 1941, as a quasi-municipal corporation. The Act was conditional until approved by a majority vote of the legal voters of the District at an election to be held not later than January 1, 1942. It was provided that the affairs of the District should be managed by three trustees elected by the municipal officers of the town of Norway. The District was authorized to acquire by purchase or by the exercise of the right of eminent domain the entire property of the Norway Water Company, a private corporation theretofore furnishing the water supply in Norway.

Proceedings were taken to secure the local referendum, an election was held, the ballot was in favor of the acceptance of the Charter, trustees were chosen, and upon failure to agree as to purchase price, the present condemnation proceedings were instituted.

The Norway Water Company and the Old Colony Trust Co., trustee for the benefit of bond holders of the water company, joined in attacking the validity and sufficiency of the proceedings to perfect organization under the Charter, and

further alleged errors of vital consequence in the proceedings instituted by the District trustees.

Upon the issues thus raised, the case was reported to this Court by agreement of the parties and with approval of the Chief Justice presiding.

The legislative and judicial history of water districts in Maine provides enlightenment on the matters to be considered. The first instance in this State where the legislature decided that public interest and welfare of a group of communities in a water supply for municipal and domestic service were sufficient to warrant the creation of a quasi-municipal corporation, which would take the place of the existing private water company, occurred in 1899 when under c. 200, P. & S. Laws of that year, the Kennebec Water District was created. Many objections, on constitutional and legal grounds, were raised and the Court was called upon to consider a wide range of questions, the determination of which removed doubts and uncertainties and sanctioned and expounded the legislative procedure there adopted. See *Kennebec Water District, in Equity* v. *Waterville*, 96 Me., 234, 52 A., 774, and *Kennebec Water District* v. *Waterville*, 97 Me., 185, 54 A., 6, 60 L. R. A., 856.

Since that time the feasibility, convenience and benefit of such public corporations have become increasingly apparent, and the legislature has granted many charters in districts comprising a part or all of a city, a town, or a combination of both. The initial legislation furnished a pattern which has been largely followed. In practically all of the charters, the establishment of a water district is made subject to a local referendum to make sure that the community affected is in favor thereof. The acquisition of the private system of water supply is provided for, either by purchase, if agreement can be reached as to price, or in event of failure to agree, by the exercise of the right of eminent domain, proper safeguards being provided to the end that the private Company shall receive just compensation for its assets and franchises. A petition is presented

to a Justice of the Supreme Judicial Court seeking the appointment of appraisers to determine the value of the plant, property and franchises, subject to final confirmation by the Court. While the jurisdiction thus given to the Court is special, and to be exercised only as provided for in the Act, yet it follows the course of equity procedure, by express provision in some charters, and by clear implication in all others. The guiding principle, therefore, has been expressed and has long had recognition that where important rights affecting a community are involved and the substantial rights of all parties are protected, technical objections are entitled to but little weight. *Kittery Water District* v. *Agamenticus Water Co.*, 103 Me., 25.

The first objection attacks the validity of the referendum election, and if sustained, the entire charter becomes a nullity, and the proceedings taken thereunder void. It is that the election was not legally called, advertised and conducted. The Act (§ 18) provides that it "shall take effect when approved by a majority vote of the legal voters of said district, voting at an election specially called and held for the purpose, by the municipal officers of the town of Norway, to be held at the voting places in said town; . . . Such special election shall be called, advertised and conducted according to the law relating to municipal elections; . . . The town clerk shall reduce the subject of this act to the following question: 'Shall the act to incorporate the Norway Water District be accepted?' and the voters shall indicate by a cross placed against the words 'Yes' or 'No' their opinion of the same. The result shall be declared by the municipal officers and due certificate thereof filed with the secretary of state by the clerk of said town."

The gravamen of the objection is that the procedure followed was that for town meetings for the election of county, state and national officers, and instead the meeting should have been called and conducted under the statutory provisions relating to regular town meetings.

There is no constitutional or statutory provision specifically

designating a method of procedure for "municipal elections" *eo nomine*. What then was the legislative intent by the use of this term? The same phraseology is found in practically all of the acts which provide for a local referendum, whether for cities or towns. The usual and regular town meeting procedure provided by R. S., c. 5, §§ 2-35, inclusive, has no application to cities, yet both cities and towns are municipalities.

Then we find § 36 of c. 5, R. S. making express provision that none of the preceding sections as to ordinary town meetings are applicable to town meetings for the choice of governor, senators and representatives and that town meetings for that purpose shall be held as the constitution directs. So we start out with different provisions as to procedure with regard to town meetings for the election of state officers.

The Constitution of Maine, Article IV, Part First, prescribes regulations for town meetings for the election of state representatives and also adapts similar procedure to such elections in cities.

Article IV, Part Second, § 3, provides that meetings within the State for the election of senators shall be notified, held and regulated in the same manner as those for representatives.

Article V, Part First, § 3, provides that meetings for the election of governor shall be notified, held and regulated in the same manner as those for senators and representatives.

R. S., c. 8, § 12, provides that municipal officers, sixty days before any election, may divide towns and wards of cities into not more than three convenient polling districts.

§ 23 of said chapter provides that the selectmen shall issue their warrant for state elections and "such meeting shall be warned like other town meetings." § 24 provides that the selectmen shall preside and have all the powers of moderators of town meetings.

Finally, we note § 42, which provides:

"All town meetings required for election of county officers, state auditor, United States senator, representatives

to congress, or of electors of president or vice-president of the United States, or for the determination of questions submitted to the people by the legislature, shall, as to calling, notifying, and conducting them, be subject to the regulations made in this chapter for election of governor, senators and representatives, unless otherwise provided by law."

Clearly this section warrants the conclusion reached by analysis of all the foregoing constitutional and statutory provisions that a single method is provided for notification and conduct of meetings called for the sole purpose of casting a ballot for the election of county, state and national officers, and that the same identical method is used "for the determination of questions submitted to the people by the legislature."

Logic, therefore, compels the conclusion that the expression used in the charter "Such special election shall be called, advertised and conducted according to the law relating to municipal elections," has application to a meeting which is confined to the one purpose of balloting upon a single referendum question submitted by the legislature for determination by that portion of the electorate which is affected. Here, as in a state-wide referendum, the municipal officers are required to declare the result and the town clerk is required to file a certificate thereof with the Secretary of State. In regular town meetings there is no such requirement.

The fundamental purpose of the Act in this respect is to properly inform legal voters of the District of the time and place when and where they may have ample opportunity to cast their ballots upon the particular question submitted for their determination by the Act.

The preliminary requirements as to qualification of voters, warrant issued by selectmen designating time and place of meeting, and proof of notice by officer's return, are essentially the same for an ordinary town meeting as they are for town meetings for elections, enumerated in R. S., c. 8, § 42.

The basic difference is that a moderator is provided for in usual town meetings. Such officer is eliminated in meetings for elections, and the selectmen take his place. The office of moderator is to preside at and control a meeting or assembly where the citizens gather to discuss, deliberate and decide the prudential, administrative and political affairs of the town and to elect town officers. He regulates the business, declares the votes and when such declaration is questioned, makes certain by polling the voters. No person can speak until leave is obtained of the moderator, and all must keep silent at his command. He may remove a person guilty of disorderly conduct.

In elections there is no need for a presiding officer with such duties and responsibilities.

But the respondents assert that the case of *Kittery Water District* v. *Agamenticus Water Co.*, supra, is decisive to the contrary. There the town warrant provided for the election of a moderator and one was chosen and presided and the Court ruled that such a town meeting was effectual. The statement of the Court is:

> "The charter provided that the meeting should 'be called, advertised and conducted according to the laws relating to municipal elections.' Chapter 4 of R. S. (now c. 5 in 1930 Revision) relating to elections in towns applied and governed. This special meeting was duly called and its proceedings had in accordance with the provisions of that statute and the charter to which it applied."

The chapter referred to is that containing the provisions relating to ordinary town meetings. The method provided for meetings for elections was then contained in R. S., 1903, c. 6, § 54 et seq., now R. S. 1930, c. 8, § 23 et seq. From the record in that case, it appears that the act there construed, P. & S. L. 1907, c. 424, provided that the affairs of the District should be managed by a board of three trustees to be chosen by ballot at the meeting called to accept the Act, and that the Water District at any legal meeting thereof might adopt by-laws.

The warrant for the meeting included these as matters to receive attention as well as the balloting upon the acceptance of the charter. The Court evidently was of opinion that the nomination and election of trustees, the presentation as to their qualifications and the discussion as to by-laws, made the services of a moderator appropriate.

In the Act now under scrutiny, there were no trustees to be elected at the meeting for acceptance of the charter and no by-laws to be considered. Provision was made (§§ 6, 7) that the trustees should be elected by the municipal officers of the town of Norway within three days after the referendum meeting, while by-laws were to be thereafter adopted by the trustees. Here, then, it is of significance that the Act stripped the referendum meeting of every duty but one — the referendum ballot. In this connection, it is of interest to note that in this Act, as in most of the more recent similar Acts, it is provided that the referendum shall be had "at an election specially called and held for the purpose at the voting *places* in said town." Legislative intent appears to sanction more than one place for the accommodation of voters, and to negative the theory of the necessity of a moderator to regulate and control a deliberative assembly, or intention that the voters should be congregated at one time and place to enable them to participate in such an assembly.

Inasmuch as the preliminary requirements as to warrant, notice, return of officer, and legal qualifications of voters, are identical under both methods, the fundamental purpose to properly inform legal voters of the District of the time and place or places where they might have ample opportunity to signify their will upon the question submitted, is fully served, whether the meeting be presided over by a moderator or by a selectman. As the Court said in the Kittery case above cited:

"The referendum to the people was designed to obtain an expression of their wishes. Such a full expression as was here had should not be disregarded unless some impera-

tive statute or rule of law requires. We find none. We hold that the meeting was legal and the acceptance of the charter valid."

The statement of the Court to the effect that the statutory provisions relating to ordinary town meetings "applied and governed," was perhaps more positive than necessary, and in any event, applied only to the organizational procedure there provided. Under the circumstances of that case, the method used was appropriate and the decision upholding the validity of the meeting proper. This, however, cannot be regarded as invalidating the meeting called under the Act here considered, and which accomplished a like purpose of properly informing the voters of the time and place of meeting, and giving ample opportunity for a full expression of their wishes. Here the voters signified their will in the usual ballot methods in this State, as provided for in the Act. The polls were open for nine hours, from ten A.M. to seven P.M. 569 ballots were cast during that period, of which 567 were in favor and two opposed. We find no "imperative statute or rule of law" in the present case which requires that the will of the electorate, so definitely made manifest, should be thwarted.

The case of *Kittery Water District* v. *Kittery Water Co.,* supra, was followed in *Rumford & Mexico Bridge District* v. *Mexico Bridge Co.,* 115 Me., 154, 98 A., 625. There the referendum provision required that the voters of Rumford Falls Village Corporation and the voters from the Mexico section of the District should hold separate meetings to be "called, warned and conducted according to the laws relating to municipal elections." The Court said:

"A similar phrase is found in many of the charters for water districts, which were submitted to the voters for approval. In *Kittery Water Dist.* v. *Water Co.,* 103 Me., 25, 67 A., 631, it was held that, under a similar provision, Chapter 4 of Revised Statutes relating to town elections applied and controlled."

The actual point there passed upon was the claim that a special provision of the Rumford Falls Village Corporation charter required publication of notice in a newspaper, which was not seasonably done. It was the only infirmity suggested. The Court said further:

> "It is not claimed that the meeting was not warned in all respects according to the laws relating to town elections."

Inasmuch as the method of warning or calling a meeting is the same in both instances, and the point decided by the Court was that a special provision for newspaper publication did not have application, the decision itself is not to be deemed adverse to the present holding.

Our Court has said:

> "The rules for conducting an election contained in the statute, are directory and not jurisdictional in their character. They are intended to afford all citizens an opportunity to exercise their right to vote, to prevent illegal votes, and to ascertain with certainty, the true number of votes, and for whom cast." *Rounds, Petitioner*, v. *Smart*, 71 Me., 380 at 388.

With particular application to the situation here considered, we adopt the reasoning of the Court in *East Bay Util. Dist.* v. *Hadsell et als.*, 239 Pac. 38, at pp. 45-46, 196 Cal. 725, as follows:

> "It is thus apparent that the election itself is the controlling feature and the ultimate objective of the statute. If the election has been honestly and fairly conducted, and no one has been injured by the manner in which the preliminary steps leading thereto have been taken, no reason exists for declaring it invalid. In the instant case there was no evidence offered on the part of the defendants tending to show that they had been prejudicially affected by the procedure which had been adopted and followed leading

up to the election. As heretofore set forth, the findings by the court were to the effect that no error or irregularity or omission in the proceedings affected any of the substantial rights of the defendants; that they had full notice that the proposition for the issuance of the bonds would be submitted to the electors of the district at an election to be held on the said 4th day of November, 1924; and that the vote at such election was a full and fair expression of the will of the electors of the district who were qualified to vote at said election upon said proposition. Those findings, while in some respects possibly subject to appellants' criticism that they are but conclusions of law, nevertheless speak the truth as an ultimate expression by the court of the conditions surrounding the situation.

"The books are filled to overflowing with statements of the rule, in substance, that, wherever possible from a standpoint of legal justice to validate an election, it is the duty of the court to do so."

The preliminary proceedings for calling ordinary town meetings and those for calling special elections being identical, and the statuté concerning elections giving to the selectmen all the powers of moderators (R. S., c. 8, § 24) it is the opinion of the Court that a meeting held to ballot upon a question submitted to the voters would be valid whether provision was made for the election of a moderator, or whether a selectman presided. Under the particular Act now passed upon, a moderator was not a necessary official. The referendum meeting was legally called and held.

The remaining questions for determination have reference to certain amendments in the proceedings which were submitted by the petitioners and allowed by the Chief Justice presiding at the hearing. The officer's return on the referendum warrant, and the town clerk's report required to be filed with the Secretary of State, contained defects and errors which were corrected in accordance with the facts, as fairly shown

by the record. While it is claimed that the election as notified and held was by voters of the town of Norway, and not voters of the Water District, the fact cannot be gainsaid that the check list as prepared contained only the names of voters of the District, and ballots were cast by none others. This was specifically admitted during the hearing by counsel for the respondents. The objection is purely technical and without merit.

There was also objection to the allowance of an amendment making the Old Colony Trust Co., mortgagee under a bond mortgage of the Norway Water Co., a party defendant. This is not insisted upon, and inasmuch as the Trust Co. made a general appearance, joined in the answer of the Water Co., and was represented by counsel, it is evidently abandoned and needs no consideration.

There is one further issue to be considered concerning another amendment submitted by the petitioners, and allowed.

The Charter provided that the Act was subject to approval "by a majority vote of the legal voters of said district" and "only such voters as reside in said district as aforesaid are entitled to vote upon the above question." The petition of the trustees as originally filed alleged that the Act was approved by a majority vote of the inhabitants of the town of Norway. The Act required that the petition be filed on or before July 1, 1942. This was done, but, against objection, petitioner was allowed on August 14, 1942, to amend by striking out the particular allegation and alleging that the Act was accepted by a majority vote by ballot of the legal voters of the Norway Water District, called and held in the manner provided in the Act, that the votes cast were 567 for and 2 against, which vote exceeded 20% of the total number of names on the check list, as was also required by the Act, but not alleged in the original petition.

Complain is that an amendment, even though in accordance with the fact, could not be allowed after July 1, 1942, the time limit for presentation of the petition.

In elaboration of the foregoing objection, respondents assert that allegation in the original petition as to acceptance of the Act showed noncompliance instead of compliance with requirements, which were jurisdictional; that the Court, not having jurisdiction at common law but only by special legislative grant in the Charter, the petition must show on its face the jurisdictional facts and must be filed before July 1, 1942. As the petition did not show such jurisdictional facts until amended subsequent to July 1, it was null and void, say the respondents.

Acting in conformity to the established rule that in a judicial proceeding provided for by a special act of the legislature and granting the right of eminent domain, it must be shown that there has been compliance with jurisdictional requirements, the petitioners undertook to allege in their petition that the Act had been approved by the voters under the referendum provision thereof. The Act provided that it should be subject to approval "by majority vote by ballot of the legal voters of the Norway Water District, to wit, that part of the town of Norway which is within the limits embraced by the Norway Village Corporation," and the total of votes so cast for and against the acceptance of the Act must exceed 20% of the total number of voters on the check list of voters in said district.

The petition as originally presented alleged acceptance of the Act "by majority vote by ballot of the inhabitants of said *Town of Norway* qualified to vote in Town affairs, at a special meeting called for the purpose subsequent to said twenty-sixth day of July and before the first day of January, 1942, to wit, on the fourth day of November, 1941, *which meeting was called and held in the manner provided in said Act.*" (Emphasis ours.)

The next paragraph begins: "That within three days after the meeting of the voters of said *District* to accept said Act" etc.

The obvious and patent error in statement is the inadvertent use of "Town of Norway" instead of Norway Water District.

There was also an error of omission in the failure to allege that the total votes exceeded 20% of the eligible voters.

The petition was filed before July 1, 1942, as required by the Act. Hearing was assigned for July 21, 1942, and thence continued until August 14, 1942, when the errors and omissions in the petition were corrected by amendment.

The position of the respondents is the petition could not be amended as to jurisdictional allegations, and even if that were possible, corrections must be made before July 1, 1942, because Section 19 of the Act (c. 55, P. & S. 1941) provided:

> "If said water district shall fail to purchase or file its petition to take by eminent domain, before July 1, 1942, . . . then this act shall become null and void."

Emphasizing contention, the respondents say in effect that as the petition not only failed to show but negatived jurisdiction of the Court, it was a nullity, therefore no petition was before the Court, and by express fiat of the legislature the Act itself became null and void.

In judicial proceedings in this State, and particularly those which are governed by equity practice, it is the policy of the legislature and the uniform rule adopted by our Court that amendments should be liberally allowed in the furtherance of justice, and to insure that every case, so far as possible, may be determined on its merits. This is not peculiar to our own jurisdiction, but instead finds practical unanimity of accord throughout the country. 41 Am. Jur., Pleading, §§ 288, 292.

R. S., c. 91, § 42, provides as to equity causes:

> "The bill of complaint shall state the material facts and circumstances relied on by the plaintiff, with brevity, omitting immaterial and irrelevant matters, and may be amended or reformed at the discretion of the court, with or without terms, at any time before final decree is entered in said cause."

In *Conway Fire Insurance Co.* v. *Sewall*, 54 Me., 352 at 357, the Court said:

"But, if the declaration was insufficient, it might have been amended while the cause was on trial, by inserting the allegation that notice and proof of the loss was in conformity with the statute, to which reference has been had. All that is required in amendments is, that the cause of action should remain the same. Within this limit, amendments, to reach the merits of the case, are most liberally allowed. A declaration so defective, that it would exhibit no sufficient cause of action, may be cured by an amendment, without introducing any new cause of action. *Pullen* v. *Hutchinson*, 25 Me., 249."

See also *Solon* v. *Perry*, 54 Me., 493; *Thomaston* v. *Friendship*, 95 Me., 201, 49 A., 1056.

Here the jurisdictional facts actually existed, as shown by the record. The parties were all before the Court. There had been no determination of their rights. The answer of the respondents had not been filed when the amendments were allowed. Ample opportunity was thus afforded to the defense to traverse the facts.

If reality be ascertained and patent, the faulty recital thereof which would result in perpetuation of error should not control, if proceedings are still pending.

But, assert the respondents, our Court has held otherwise, and cite as decisive thereof the case of *Newcastle* v. *County Commissioners*, 87 Me., 227, 32 A., 885. There, the Commissioners received a petition to alter a road in Newcastle after the selectmen of that town had refused to do so. The petition failed to state many facts necessary to give the Commissioners jurisdiction. They, however, acted upon the petition as drawn and decided to make the alteration in the road. Thereafter, the petition was amended. On certiorari the Court said, at p. 230:

"But they [the Commissioners] have no right to amend a petition, signed by others, after it has been acted upon by them, and thus confer upon themselves a jurisdiction

which they did not possess when the petition was presented."

That is not this case. The distinction appears by the comment of the Court prefacing the above cited quotation, when it said:

"We do not doubt the authority of county commissioners to amend the record of their own doings."

Indeed, in a similar proceeding, decided at almost the identical time by the Court composed of the same Justices, in *Donnell* v. *County Commissioners*, 87 Me., 223, 32 A., 884, it was held:

"On petitions of this sort, appropriate evidence may be received in aid of a defective record that would authorize amendments according to the fact. No such evidence is offered or suggested in this case."

So, too, the case of *Dinsmore* v. *Auburn*, 26 N. H., 356, relied on by the respondents, is to be read in the light of the fact that amendment vital to maintenance of the action was offered too late to be given effect, as Commissioners had already acted without jurisdiction.

Our Court has already well said in *Inh. of Durham, Appellants*, 117 Me., 131 at 134, 103 A., 9 at page 10:

"Statutory requirements for taking private property for the public welfare are to prevent injustice and ensure property compensation, but not to needlessly delay what public convenience and necessity demand."

Further discussion appears unnecessary. The careful research and earnest endeavor of counsel for the respondents, who frankly state that they feel justified in raising every possible legal objection to the maintenance of these proceedings, no matter how technical it may be, has been painstaking and thorough, but not convincing. We hold that the proceedings have been regular, that such errors as were made in return, re-

ports and pleadings were amenable to correction, and have been so amended in accordance with the facts; that the petition for condemnation proceedings is properly before the Court, and that nothing has been done to nullify the Act of the legislature, to thwart the will of the public, or to deny to the respondents the rights accorded to them by the legislation. The case is accordingly returned to the sitting Justice for further appropriate proceedings upon the petition now pending in accordance with the provisions of the Act of incorporation of the Norway Water District, chapter 55 of the Private and Special Laws of Maine, 1941.                *So ordered.*