598 A.2d 489

Fayez Daifallah KHAWAJA, et ux.

v.

MAYOR AND CITY COUNCIL, CITY OF
ROCKVILLE, Maryland, et al.

No. 1306, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Nov. 27, 1991.

Certiorari Granted Feb. 25, 1992.

**316**

George H. Eggers, Silver Spring, for appellants.

Joann Robertson, Sr. Asst. Co. Atty. (Joyce R. Stern, Co. Atty., on the brief) Rockville, for appellees.

Argued before WILNER, C.J., GARRITY, J., and JAMES T. SMITH, JR., J., Specially Assigned.

GARRITY, Judge.

## STATEMENT OF FACTS

The Khawajas were seriously injured while they were driving home late in the evening on July 9, 1988, when their automobile collided with a police cruiser operated by Sergeant Alice Anselmo of the Rockville Police Department. In the course of responding to an emergency call from another police officer, Sgt. Anselmo activated her emergency lights, and silently sped west-bound through a red light and into the intersection of Nelson Street and Montgomery Avenue. The Khawajas' south-bound vehicle, with a green light in its favor, was entering the intersection when the police cruiser crashed into the side of the car.

Sustaining personal injuries and property damage, the Khawajas filed a timely complaint against the City of Rockville and Sgt. Anselmo, against whom they also sought

punitive damages. The focus of the complaint was Sgt. Anselmo's alleged gross negligence for not having sounded the police cruiser's siren while responding to the emergency call:

> [t]hat defendant's motor vehicle was not being operated with its siren sounding; that its siren was never sounded at any time ... Anselmo did approach the intersection with the intention of running the red light, that she approached said intersection at a speed of 50 or more miles per hour in a zone where the speed limit was 25 miles per hour, that Anselmo ... had intentionally not activated the siren of her motor vehicle; that she saw that she had a red light at Nelson Street when she had adequate time and distance to stop before entering the intersection ... defendant made a conscious decision to go through the red light and enter the intersection at a high rate of speed ... plaintiff's vehicle was in view as an approaching vehicle as she approached the intersection; that she was accelerating as she entered the intersection ...

Sgt. Anselmo filed a motion to dismiss complaint on the ground that it failed to state a cause of action against her. Rockville also challenged the complaint by way of a motion for partial summary judgment requesting that the city's liability be limited to its insurable interest. In ruling on the motions, the Circuit Court for Montgomery County (Cave, J.) dismissed Sgt. Anselmo from the suit and granted Rockville's motion for partial summary judgment, while certifying the case to us under Md.Rule 2–602(b).[1] Appealing from this ruling, the Khawajas present the following issues for our review:

> I. Whether the court erred in dismissing Sgt. Anselmo from the suit on the grounds that the complaint did not state a cause of action in gross negligence.

---

1. Additional facts relevant to the legal issues presented are incorporated in the discussion.

II. Whether Rockville's liability is limited to its insurable interest.

III. Whether the Local Government Tort Claims Act, §§ 5–401 *et seq.*, Md.Code Ann. (1989 Repl.Vol.) waives the defenses Rockville does not hold in common with Sgt. Anselmo.

## I. *Gross Negligence*

The Khawajas contend that the complaint states a cause of action against Sgt. Anselmo for gross negligence. They base this contention on the argument that language sufficiently reflects Sgt. Anselmo's actions in deliberately not sounding the siren, while intentionally speeding through a red light with the Khawajas' automobile in view, to sustain a finding of gross negligence.

In affirming the lower court's ruling that these facts do not set forth a cause of action in gross negligence, we pause to review the conditions for Sgt. Anselmo's immunity from simple negligence, which are set forth in Section 19–103(b)(1) of the Transportation Article, Md.Code Ann. (1987 Repl.Vol.). That subsection provides, in pertinent part:

(1) An operator of an emergency vehicle, who is authorized to operate the emergency vehicle by its owner or lessee, is *immune* from suit in his individual capacity for any damages resulting from a negligent act or omission while operating the emergency vehicle in the performance of emergency service.... (emphasis added).

The immunity granted under this section is limited, however, to simple negligence. Sec. 19–103(b)(2) provides that "This subsection does not provide immunity from suit to an operator for a malicious act or omission or for *gross negligence* of the operator." *Id.* (emphasis added).

Because it is undisputed that Sgt. Anselmo is immune from simple negligence, we need only examine whether the complaint states a cause of action for gross negligence. Gross negligence must be plead with specificity. *Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 168, 297

A.2d 721 (1972). In considering the legal sufficiency of a complaint on appeal, "we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings." *Sharrow v. State Farm Mutual,* 306 Md. 754, 759, 511 A.2d 492 (1986).

In *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 167, 297 A.2d 721 (1972), the Court of Appeals cited 61A C.J.S. Motor Vehicles § 560 as the general rule for what malice may warrant exemplary damages:

> In the proper case, however, punitive damages may be allowed as a means of enforcing the rules governing the use of the highways by the drivers of motor vehicles, and such damages have been permitted for recklessness, wantoness, or willfulness, on the part of the operator of a motor vehicle, and also for gross negligence.

The *Smith* Court defined malicious negligence which includes gross negligence as constituting a "wanton or reckless disregard for human life" in the operation of a motor vehicle with the known dangers and risks attendant to such conduct. *Id.* at 168, 297 A.2d 721.

In *Nast v. Lockett,* 312 Md. 343, 352, 539 A.2d 1113 (1988), the Court cautioned that only conduct that is of an extraordinary or outrageous character will be sufficient to supply the requisite state of mind. Reckless driving is not enough; there must be reckless disregard for human life. *Id.* at 352, 539 A.2d 1113.

In *Boyer v. State,* 323 Md. 558, 594 A.2d 121 (1991), the surviving sons of Mr. and Mrs. Boyer, who were killed by a suspected intoxicated driver while he was being pursued, argued that gross negligence was sufficiently pled where it was alleged that a state trooper had continued the chase for seven miles in speeds reaching in excess of 100 miles per hour through busy intersections without immediately activating all of the cruiser's emergency equipment. *Id.* at 563, 591, 594 A.2d 121. The Court held,

[v]iewing allegations in the light most favorable to the plaintiffs, we nevertheless hold that Trooper Titus's alleged conduct did not amount to gross negligence as a matter of law. The plaintiff's allegations that Trooper Titus drove at high speeds on a road congested with traffic in an attempt to apprehend a suspected intoxicated driver do not indicate that he acted with wanton or reckless disregard for the safety of others. Although the complaint states that Trooper Titus did not "immediately" activate his emergency equipment, these somewhat vague allegations do not support the conclusion that he acted with gross negligence.

*Id.* 323 Md. at 580, 594 A.2d 121.

Citing *Nast* with approval the Court in *Boyer* noted: "In order to charge Trooper Titus with gross negligence, the plaintiff must have pled facts showing that Trooper Titus acted with a wanton and reckless disregard for others in pursuing Mr. Farrar." *Nast v. Lockett, supra,* 312 Md. at 367, 539 A.2d 1113.

Further, the Court, while cautioning that each case depends upon its own facts, favorably examined *Bullins v. Schmidt,* 322 N.C. 580, 369 S.E.2d 601 (1988), wherein the North Carolina Supreme Court held that police officers had not acted with conscious or reckless disregard for others while pursuing a car being driven erratically at about 1 a.m. over 18 miles at high speeds of up to 100 miles per hour.

## II. *Partial Summary Judgment*

The Khawajas contend that the circuit court erred in granting Rockville's motion for partial summary judgment, which had the effect of limiting their total recovery to the city's insurable interest. The Khawajas maintain that Rockville's self-insurance application, which was accepted by the Motor Vehicle Administration, is so ambiguous on its face as to the amount of minimum coverage it would provide, that the city is foreclosed from raising the defense of self-insurance. Although the application for self-insur-

ance may have been ambiguous,[2] the amount of minimum coverage required of a self-insured municipality is mandated and clarified by statute.

Taken together, Sections 17–107(c) and 19–103(c) of the Transportation Article, Md.Code Ann. (1987 Repl.Vol.) delineate the general scope of Rockville's limited liability. On the one hand, Section 19–103 provides a ceiling by shielding a self-insured jurisdiction from liability for any damages arising from the negligent operation of an emergency vehicle performing an emergency service that exceed the amount of its self-insurance.[3]

---

**2.** The record reflects that the figure indicating the minimum liability coverage on the self-insurance application was $20,000 per bodily injury liability claim instead of the figures $20,000/$40,000. Item No. 5 of Rockville's application for self-insurance reads as follows:

MINIMUM MANDATORY LIMITS ARE $20/40/10,000, UNINSURED MOTORIST COVERAGE IN LIKE AMOUNTS AND $2,500 IN ECONOMIC LOSS (PIP). INDICATE BELOW COVERAGES AND AMOUNTS YOU WISH TO SELF–INSURE.
X   $20,000 Bodily Injury Liability
X   $40,000 Property Damage Liability
X   $10,000 Uninsured Motorist Coverage
X   $2,500 Economic Loss Coverage (PIP)

**3.** § 19.103(c) *Liability of owner or lessee.*—
   (1) an owner or lessee or an emergency vehicle, including a political subdivision, is liable to the extent provided in § 5–399.5(c) of the Courts and Judicial Proceedings Article for any damages caused by a negligent act or omission of an authorized operator while operating the emergency vehicle in the performance of emergency service as defined in subsection (a) of this section.
   (2) An owner or lessee of an emergency vehicle, including a political subdivision, shall have the immunity from liability described under § 5–399.5(c) of the Courts and Judicial Proceedings Article.
   (d) *Liability for self-insured jurisdiction.*—A self-insured jurisdiction shall have the immunity from liability under this section as described under § 5–399.5(c) of the Courts and Judicial Proceedings Article.
Sections 5–399.5(c) and (d) set forth Rockville's liability in the instant case. These subsections provide in pertinent part:
   (c) *Liability of owner or lessee.*—(1) An owner or lessee of an emergency vehicle, including a political subdivision, is liable to the extent provided in subsection (d) of this section for any damages caused by a negligent act or omission of an authorized operator

Section 17–107(c), on the other hand, provides a floor for liability by prohibiting a self-insured jurisdiction from raising the defense of sovereign immunity to the extent of the amount of its self-insurance.[4]

■ Taken together, we believe these statutes provide that a jurisdiction that can demonstrate it is self-insured enjoys limited liability for damages arising out of the negligent operation of an emergency vehicle [5] performing an emergency service to the extent that the damages exceed

---

while operating the emergency vehicle in the performance of emergency service.

(2) This subsection does not subject an owner or lessee to liability for the operator's malicious act or omission or for the operator's gross negligence.

(3) A political subdivision may not raise the defense of governmental immunity in an action against it under this section.

(d) *Limitation on liability.*—Liability under this section for self-insured jurisdictions is limited to the amount of the minimum benefits that a vehicle liability insurance policy must provide under § 17–103 of the Transportation Article, except that an owner or lessee may be liable in an amount up to the maximum limit of any basic vehicle liability insurance policy it has in effect exclusive of excess liability coverage.

4. § 17–107(c) *Defense of sovereign immunity.*—

An owner or lessee of any motor vehicle registered under Title 13 of this article may not raise the defense of sovereign or governmental immunity, as described under § 5–399.4 of the Courts and Judicial Proceedings Article.

Section 5–399.4 of the Courts and Judicial Proceedings Article provides, in pertinent part:

**Same—Negligent use of motor vehicle while in government service.**

An owner or lessee of any motor vehicle registered under Title 13 of the Transportation Article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government.

5. Section 11–118 of the Transportation Article Md.Code Ann. (1987 Repl.Vol.) provides that a police vehicle driven without the use of its siren is an "emergency vehicle." *See Taylor v. Mayor of Baltimore,* 314 Md. 125, 549 A.2d 749 (1988).

the amount of the jurisdiction's self-insurance. We hold that the trial court properly granted the City of Rockville's partial summary judgment and thereby limited its liability to the amount of its insurable interest.

### III.  *Local Government Tort Claims Act*

The Khawajas contend that the Local Government Tort Claims Act (LGTCA), § 5–401 *et seq.*, Md.Code. Ann. (1989 Repl.Vol.) precludes Rockville from asserting any defense that it does not hold in common with Sgt. Anselmo. Thus, as Sgt. Anselmo does not also possess the emergency vehicle *ad damnum* defense which Rockville asserts, it can not take advantage of such limitation. We reject this argument because it implies that passage of the LGTCA acted as a waiver of governmental defenses and immunities held by the governmental entity independent of defenses and immunities held by the employee.

Section 5–403 of the LGTCA provides, in pertinent part:
**Liability of government; defenses.**

(a) *Limitation on liability.*—The liability of a local government may not exceed $200,000 per an individual claim, and $500,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions, including liability arising under subsection (b) of this section.

(b) *When government liable.*—(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.

(2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

\*    \*    \*    \*    \*    \*

(d) *Defenses not waived.*—Notwithstanding the provisions of subsection (b) of this section, this subtitle does

not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.

(e) *Defenses available to government.*—A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

The purpose clause of Senate Bill 237, the legislation by which ch. 594 of the Laws of Md.1987, the Act, was enacted, provides in part:

[for] the purpose of establishing a limit on the liability of the local governments of the State; requiring local governments to provide a defense for their employees in certain civil actions; *providing for certain defenses and immunities under certain circumstances;* providing that, absent certain circumstances, certain employees are not personally liable for committing certain torts; ... prohibiting a local government from asserting governmental immunity under certain circumstances; providing for the application of this Act; repealing certain provisions of law relating to charter and code counties; providing that any provision of law enacted by a local government that is inconsistent with this Act is repealed; ... *and generally relating to limiting the liability of local governments.* (Emphasis added).[6]

---

**6.** During the passage of Senate Bill 237, the Maryland Trial Lawyers' Association (MTLA) argued against the Act because it "represent[ed] an unwarranted extension of immunities ... to counties and municipalities...." To provide for a clear waiver of sovereign immunity, the MTLA requested that the Act be patterned after the Maryland Tort Claims Act and proposed, among other amendments, that the Act specifically state that immunity is "hereby waived" and that the preservation of existing immunities be deleted. Only with these proposed changes would "this Bill ... become what it has been

The only reference to eliminating governmental immunity appears in the phrase, "prohibiting a local government from asserting governmental immunity *under certain circumstances*" (emphasis added). Given that the preceding sentence requires local governments "to provide a defense for their employees in certain civil actions," we perceive the "certain circumstances" where a local government is prohibited from asserting immunity are those set forth in the Courts and Judicial Proceeding Article § 5-403(b)(2), Md. Code Ann. (1989 Repl.Vol.). That subsection provides, "[a] local government may not assert governmental or sovereign immunity *to avoid the duty to defend or indemnify an employee* established in this subsection." (Emphasis added). Subsection (b)(1) provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." *Id.* § 5-403(b)(1).

A legislative waiver of immunity by a municipality is ineffective unless its legislature has clearly stated an intention to waive immunity and either there are funds available for satisfying the judgment or the defendant has the power to raise funds for that specific purpose. *Heffner v. Montgomery County*, 76 Md.App. 328, 337, 545 A.2d 67 (1988). The LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity. Viewing the LGTCA in light of its statement of purpose, the LGTCA waives only those immunities the government could have in an action raised against its employee. The statute requires the government to assume financial responsibility for a judgment against its employee by abolishing that immunity the government may have had against responsibility for the

represented to be, a waiver of sovereign immunity to the extent that is presently enjoyed by Maryland municipalities and counties ..." in exchange for a lower cap on liability. The Act was adopted without the MTLA's suggestions.

acts of its employees. The Act, however, does not *create* liability on the part of the local government as a party to the suit.

█ As the municipality, pursuant to the specific statutory scheme outlined in Section 19–103(c) of the Transportation Article, has limited its liability in accidents involving emergency vehicles to the amount of its self-insured coverage, the LGTCA would not control *ad damnum* exposure, especially under the circumstances of the matter before us wherein the employee was not grossly negligent as a matter of law. Thus, the City of Rockville enjoys a limitation on its liability exposure for any amount in excess of existing liability coverage.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.