896 F.Supp. 537 (1995)
Alphonzo E. DAWSON, Plaintiff,
v.
PRINCE GEORGE'S COUNTY, et al. Defendants.
Civ. A. No. AW 95-1247.
United States District Court, D. Maryland, Southern Division.
September 1, 1995.
Judy L. Feinberg, Andrea L. Koyner, Washington, DC, for plaintiff Alphonzo E. Dawson.
Crystal Dixon Mittelstaedt, Office of Law for Prince George's County, Michael P. Whalen, Upper Marlboro, MD, for defendant Prince George's County.

MEMORANDUM OPINION
WILLIAMS, District Judge.
Plaintiff Alphonzo E. Dawson ("Dawson") commenced this action pursuant to 42 U.S.C. § 1983 and state common law. Dawson seeks recovery for injuries he allegedly sustained during his arrest by Corporal Daniel S. Ricker ("Ricker"). At the time of the alleged incident Ricker was a police officer on duty for the Prince George's Police Department. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.
Presently pending before the Court is Defendant's, Prince George's County, Maryland ("County"), motion to dismiss or, in the alternative, for summary judgment. Pursuant to *538 Fed.R.Civ.P. 12(b)(6), the Court will treat the County's motion as one for summary judgment. Pursuant to Fed.R.Civ.P. 42(b) all Defendants move this Court for bifurcation of trial and stay of discovery. The parties have fully briefed the issues involving each motion. No hearing is necessary. Local Rule 105.6 (D.Md.1994). For the reasons set forth more clearly below, the Court will grant both motions.

FACTS
The Court has construed the following facts, and any reasonable inferences drawn therefrom, in Dawson's favor. See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On or about March 20, 1994, at approximately 10:55 p.m., Kevin Smith ("Smith") was driving a vehicle in which Dawson was a passenger. Smith was driving in the 7200 Block of Landover Road, Landover, Maryland where Prince George's Police officers, including Ricker, stopped the vehicle. Once stopped, Smith exited the vehicle to speak with the police officers.
Dawson remained in the car with his seatbelt fastened. While there, an officer, whom Dawson believes to be Ricker, unleashed a trained police dog. Upon Ricker's command, the dog viciously attacked Dawson. Thereafter, while the police dog continued to attack Dawson, another police officer took hold of Dawson's right arm and told him to exit the vehicle. The police dog continued to attack Dawson, preventing him from complying with the command. Once the police officer instructed the dog to cease the attack, however, Dawson complied and exited the vehicle.
With Dawson out of the car the police dog, again, viciously attacked Dawson. While the trained police dog attacked Dawson, the police officers watched, but did nothing to stop the attack. The police officers then pulled guns on Dawson, slammed him to the ground, handcuffed him and picked him up by the handcuffs. Dawson was then arrested, by a police officer whom he believes to be Ricker, however, no police officer read him his rights.
Dawson subsequently filed this action in the Circuit Court for Prince George's County, Maryland against Prince George's County and Daniel S. Ricker asserting violations of 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the United States Constitution, as well as negligence, assault and battery, negligence per se, intentional infliction of emotional distress, gross negligence, false arrest and false imprisonment. With respect to the County, among other things, Dawson alleges that it failed to properly hire, train, supervise or control its personnel.
Defendants timely removed the action to this Court. The County now moves the Court to summarily grant judgment in its favor on all of Dawson's state common law claims. The County bases its motion on Maryland's Local Government Tort Claims Act (the "Act"), Md.Code Ann., Cts. & Jud. Proc., §§ 5-401 et seq. (1995), and its immunity thereunder. All of the Defendants move the Court, pursuant to Fed.R.Civ.P. 42(b) for separate trials against the individual Defendant and the County.

DISCUSSION

A. Summary Judgment

The County argues that it is immune under the Act and, therefore, is entitled to summary judgment. Summary judgment is warranted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed `to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corporation v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citations omitted). Thus, the Court's affirmative obligation is to "prevent factually unsupported claims and defenses from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987). Applying these principles to this case, the Court concludes *539 that it must grant the County's motion for summary judgment.
Dawson opposes the County's motion for summary judgment, arguing that "[t]he fact that the [Act] allows the County to assert defenses in its own behalf reflects that the County does not enjoy absolute immunity and in fact may be sued in its own behalf." Opposition, p. 5. The relevant portions of the Act provide:
Liability of government; defenses.
(a) Limitation on liability.  The liability of a local government may not exceed $200,000 per an individual claim, and $500,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions, including liability arising under subsection (b) of this section.
(b) When government liable.  (1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.
(2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.
* * * * * *
(e) Defenses available to government.  A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.
The Maryland Court of Special Appeals addressed a similar argument regarding the local government's immunity under the Act in Khawaja v. City of Rockville, 89 Md.App. 314, 598 A.2d 489, 494-95 (1991). There, "[v]iewing the [Act] in light of its statement of purpose", the Khawaja Court found that the [Act] waives only those immunities the government could have in an action raised against its employee. The statute requires the government to assume financial responsibility for a judgment against its employees by abolishing that immunity the government may have had against responsibility for the acts of its employees. The Act, however, does not create liability on the part of the local government as a party to the suit.
Id. (emphasis in original); see also Pavelka v. Carter, 996 F.2d 645 (4th Cir.1993).
This Court has also addressed the governmental immunity issue and concluded that while the County is financially responsible for a judgment against its employees, the Act does not create liability on the part of the County. See Morrill v. Prince George's County, Maryland, No. 94-22, slip op. at 3 (D.Md. August 15, 1995) (following Butler v. P.G. County, No. 89-1430, slip op. at 1 (D.Md. June 11, 1990). The Court believes this is the most sound interpretation in light of prevailing case law, the legislative history behind the Act and the "somewhat convoluted" history of local governmental immunity. See Surratt v. Prince George's County, 320 Md. 439, 578 A.2d 745, 746 (1990). Since the Court concludes that the Act does not create liability on the part of the County with respect to Dawson's state claims, no genuine issue of material fact exists. Accordingly, the Court will issue an order granting the County's motion for summary judgment.

B. Bifurcation

The Defendants move pursuant to Fed.R.Civ.P. 42(b) for a bifurcation of the claims asserted against Ricker and the County. Under Rule 42(b), the Court may, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," order separate trials of any claims or issues. The Court has broad discretion in deciding whether to bifurcate claims for trial and the exercise of that discretion will be set aside only if clearly abused. Fed.R.Civ.P. 42(b); Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir.1993).
*540 The Court's analysis naturally begins with the particular facts before it, carefully examining the claims asserted against each defendant and how they impact upon the parties moving for bifurcation. The basis for Dawson's federal claims against Ricker and the County is § 1983.
Section 1983 operates as a vehicle for imposing liability against any person, who acting under the color of state law, violates an individual's federally protected rights. 42 U.S.C. § 1983. Here, Dawson alleges violations of his Fourth and Fifth Amendment rights with regard to his arrest by Ricker and other Prince George's police officers. Since the Court may not impose vicarious liability under a § 1983 action, the viability of Dawson's claims against the County hinge on his ability to show that Ricker, or another "active" Defendant, violated his constitutional rights. See Marryshow v. Bladensburg, 139 F.R.D. 318 (D.Md.1991); see also, Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991) cert. denied 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). If Dawson fails in his efforts to show that an active defendant violated his constitutional rights, his claims against the County likewise fail. Moreover, even should Dawson prevail on his claims against any active defendant, he "must establish that the actions of the active Defendants subjecting him to Section 1983 liability were proximately caused by a custom, practice or policy of an inactive Defendant" the County. Marryshow, 139 F.R.D. at 319 (citing Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 2036-37, 56 L.Ed.2d 611 (1978)).
Evidence of the County's custom, practice or policy may include evidence of "prior incidents of police brutality, the nature of such incidents, and the municipal policymakers' reaction to them." Id. at 320. While this evidence is most certainly relevant to Dawson's case against the County, the Court would not likely allow it in Dawson's case against Ricker. See Spell v. McDaniel, 824 F.2d 1380, 1390-91 (4th Cir.1987). The prejudicial effect of such evidence would clearly outweigh its probative value. F.R.Evid. 404(a). Moreover, under F.R.Evid. 404(a), the Court would most likely exclude evidence of Ricker's past conduct aimed at proving his character and propensities.
The conflicts are obvious. The best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them. To avoid prejudice in the trial against Ricker the Court will allow only relevant evidence, if any, of the County's custom, practice or policy. Should the jury find Ricker, or other police officers involved, innocent, a trial against the County would be unnecessary. See Temkin v. Frederick Cty. Comm'rs, 945 F.2d 716, 724 (4th Cir.1991), cert. denied, 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992) ("[a] claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."). Thus, to avoid prejudice and, indeed for the sake of economy and expedition, the Court will grant Defendants' motion for bifurcation under F.R.Civ.P. 42(b). In light of this conclusion, the Court will also grant Defendants' motion to stay discovery, but only with respect to issues relevant to Dawson's case against the County.

CONCLUSION
For the reasons set forth above, the Court will issue an order granting the County's motion for summary judgment as well as the Defendants' motion for bifurcation and motion to stay.