## UNITED PRISON EQUIPMENT COMPANY, INC.

v.

## BOARD OF COUNTY COMMISSIONERS OF CAROLINE COUNTY, MARYLAND.

### Civ. No. K–94–980.

United States District Court,
D. Maryland.

Nov. 15, 1995.

---

7. This interpretation is consistent with the provisions of another Territorial Court Rule, Terr. Ct. R. 141(c), which again makes clear that a cash bond is different from a surety bond provided by an insurance company, which is merely a promise to pay a certain amount, conditioned on the occurrence of certain events.

8. The July 6th Order denied appellant's motion to stay and vacated the writ of execution entered on March 15, 1995.

Thomas K. Farley, Towson, Maryland, for plaintiff.

Richard T. Colaresi, B. Darren Burns and Shapiro and Olander, Annapolis, Maryland, for defendant.

FRANK A. KAUFMAN, Senior District Judge.

In this case, plaintiff, United Prison Equipment Co., Inc. ("United"), asserts that defendant, Board of County Commissioners of Caroline County, Maryland ("Board"), has unlawfully violated certain rights of plaintiff as a subcontractor in connection with a contract awarded to a prime contract bidder, J. Roland Dashiell & Sons, Inc. ("Dashiell"). The relevant and material facts are apparently not in dispute. Defendant has filed a motion to dismiss, or, in the alternative, a motion for summary judgment. In view of the fact that documents other than pleadings have been filed, this Court will consider defendant's said pending motion under Federal Civil Rule 56. *See* Fed.R.Civ.P. 12 and 56.

### FACTS

The jail of Caroline County, Maryland, now known as the Detention Center, was originally built in 1906, and was renovated and enlarged about 80 years later.[1] When

---

**1.** Defendant's November 3, 1994 Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment [hereinafter

the expansion and updating took place in the 1980s, the detention equipment contractor was Jailcraft, Inc. ("Jailcraft"). Thereafter, Jailcraft provided maintenance services to the jail with regard to that equipment.

In 1989, officials of the County started planning for further changes in the Detention Center. United first learned of the contemplated improvements in the Detention Center during the latter part of 1992.[2] About a year later, in August or September of 1993, United was contacted by a representative of the architect involved in the planning of those improvements, Ms. Shade, who advised United of the bidding procedures which would be applicable and suggested that United provide prequalification documents. It was the understanding of the president of United when United was so contacted by Ms. Shade that United was being requested to provide necessary checklist type of information for the architect.[3] Before the bidding process was completed, United was, in fact, deemed prequalified by the architect.[4] In the Autumn of 1993, the County advertised for bids on the project in the "Invitation to Bidders." In that document, the Board of County Commissioners specifically reserved the right "to reject any and all bids or parts thereof and/or waive any informality or irregularities as it may deem best for its interest."[5] In addition, the bid form used on the project required the following agreement by each bidding contractor:

> The undersigned certifies that the Detention Equipment Subcontractor and Security Management System Subcontractor listed above have been approved in writing by the Architect as qualified under Section

11190 and Section 11191. The undersigned acknowledges the right of the Owner to approve or reject the Detention Equipment/Security Management System subcontract(s) and/or to assign the subcontract(s) for this work.[6]

Dashiell accepted the terms of the bid form and bid in accordance therewith. In fact, as defendant has noted, "the signature page of Dashiell's bid indicates Dashiell's acceptance of these terms."[7] Furthermore, United's president indicated that she received the bid form before United submitted its bid to Dashiell, although she is not certain that she was aware of the above quoted provision at that time.[8]

As required by the bid specifications, the detention equipment contractors were prequalified, and in accordance therewith, prior to the opening of the bid of Dashiell, the architect had approved either or both of Jailcraft and United as the subcontractor for detention equipment.[9] Additionally, the bid process called for the contractor to try to achieve a minimum of 10% bids by certified minority business enterprises. That level of participation by one or more such enterprises was not required, and was set forth suggestively and as a goal to be achieved if reasonably possible.[10] The exact language of the bidding document provided in that regard: "The undersigned agrees to attempt to achieve a minimum of Ten Percent (10%) of the total dollar value, directly or indirectly, from certified minority business enterprises."[11]

---

Def.'s November 3, 1994 Mem.Supp.Dis., Summ.J.] at 2–3.

2. Plaintiff's November 21, 1994 Reply in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [hereinafter Pl.'s November 21, 1994 Reply in Opp'n] at 1–2.

3. Pl.'s November 21, 1994 Reply in Opp'n, Exhibit 1, Deposition Transcript of Lois M. Smith at 18.

4. *Id.*, Exhibit 5, Addendum 3 to Bid Documents.

5. Def.'s November 3, 1994 Mem.Supp.Dis., Summ.J., Exhibit 6, Invitation to Bidders at 2.

6. *Id.*, Exhibit 7, Bid Form at 2.

7. *Id.* at 4.

8. *Id.*, Exhibit 4, Deposition of Lois M. Smith at 38–39.

9. Pl.'s November 21, 1994 Reply in Opp'n, Exhibit 5, Addendum 3 to Bid Documents.

10. Def.'s November 3, 1994 Mem.Supp.Dis., Summ.J., Exhibit 15, Minutes of February 15, 1994 Meeting of the County Commissioners of Caroline County at 3.

11. *Id.*, Exhibit 7, Bid Form at 4.

The bids for the project were opened on December 14, 1993, and revealed Dashiell as the low bidder.[12] Before the contract was awarded to Dashiell, but after the bids were opened, one or more authorized officials of the County conferred and recommended that Jailcraft be given the detention equipment subcontract.[13] Because Jailcraft had performed such subcontract obligations in the 1980s, and since then had handled maintenance of that equipment, one or more of the said County officials apparently strongly indicated confidence in the work performed by Jailcraft. Further, the sheriff of the County and one or more others involved with the use or operation of the jail also took the position that it would be helpful to have as the detention equipment subcontractor for the new work the same company which was familiar with the existing equipment because the new equipment would need to be integrated with the old machinery.[14]

Against that background, although United's bid was less than the bid of Jailcraft, the County Commissioners determined, after consultation with the County Administrator and others, to accept the bid of Dashiell but to request Dashiell to change the detention equipment subcontractor.[15] Before so doing, the Commissioners sought legal advice from the County Attorney and were apparently advised that they had the legal right to request that change.[16]

After Dashiell received a written request from a consultant to the County Commissioners asking for the change of detention equipment subcontractor,[17] Dashiell advised the County that the change would cost approximately $10,000, or about 0.3% of the total contract price, and thereafter the architect and Dashiell executed a change order document bringing into play the substitution of Jailcraft for United.[18] As requested by Dashiell, after the contract documents were so executed, the Commissioners of the County wrote a letter to Dashiell dated March 24, 1994,[19] in which, there appeared the following:

As you know, Jailcraft installed all detention equipment in the existing facility in 1981 and has maintained these systems for the County since. Our new project [sic] renovate portions of the existing detention center and construct additions. The end result will be a detention center which contains a mixture of new and old equipment and control systems, all of which will have to function as one fully integrated system. This system, combining new and old elements, must also be reliable in terms of security and economic in terms of future operating and maintenance costs. After reviewing this situation, we felt that Jailcraft was uniquely qualified to perform this work, due to their familiarity with the existing systems.

The factors which caused us to request Jailcraft, Inc. for this job are unique to this particular building and its construction and maintenance history. If United Prison had installed and successfully maintained the existing detention equipment, then we would have been inclined to request their participation in this current project.

### Law

█ The complaint in this case does, as defendant suggests in one of its filings, indicate, but not specify, that United as a minority business enterprise, may be contending that defendant discriminated against United because the president of United, who seem-

---

12. Pl.'s November 21, 1994 Reply in Opp'n at 2.

13. Def.'s November 3, 1994 Mem.Supp.Dis., Summ.J. at 5–6.

14. Def.'s November 3, 1994 Mem.Supp.Dis., Summ.J., Exhibit 15, Minutes of February 15, 1994 Meeting of the County Commissioners of Caroline County at 3.

15. *Id.*, Exhibit 18, Minutes of February 22, 1994 Meeting of the County Commissioners of Caroline County at 2.

16. *Id.*, Exhibit 15, Minutes of February 15, 1994 Meeting of County Commissioners of Caroline County at 3.

17. *Id.*, Exhibit 19, February 22, 1994 Letter from Vitech Consulting Services, Inc. to J. Roland Dashiell & Sons, Inc.

18. *Id.*, Exhibit 21, February 23, 1994 Change Order.

19. *Id.*, Exhibit 25.

ingly has taken the lead in connection with the matters involved in this litigation, is a female.[20] More explicitly, United's complaint sets forth assertions of violations of plaintiff's constitutional rights; of defamation; and of tortious conduct which would seem to fall within the mold of interference by defendant with United's contractual relations with Dashiell. Defendant, denying any and all acts of wrongdoing, asserts at the inception, lack of standing on the part of United to pursue any and all of United's contentions in this case.

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*U.S. v. Hays,* — U.S. —, —, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (footnotes, citations, and internal quotation marks omitted).

In essence, defendant contends that it at no time entered into any contract or contract negotiations with United, that defendant's sole dealings were with Dashiell as a prime contractor, and that defendant did not deal with United as a possible subcontractor. There are many instances in which a contractor or subcontractor may lack standing. *See Estey Corp. v. Matzke,* 431 F.Supp. 468, 469–70 (N.D.Ill.E.D.1976); *Rugo, Inc. v. Henson,* 190 F.Supp. 281, 281 (D.Ct.1960). *See also Somers Construction Co. v. Board of Education,* 198 F.Supp. 732 (D.N.J.1961) (disappointed bidder failed to show essential element of tort action—that defendant school board had duty to plaintiff). There are nev-

ertheless instances in which a plaintiff subcontractor or contractor has standing to assert either certain constitutional and/or nonconstitutional rights. *See Berlanti v. Bodman,* 780 F.2d 296 (3rd Cir.1985). In any event, in this case, in order for this Court to determine whether the first element of standing exists (i.e. whether defendant has invaded a legally protected interest of United), this Court must reach the merits of United's claims.

In so doing, this Court notes that the deposition testimony of United's own president makes it clear that this is not a case in which the record contains one iota of evidence or proffered evidence of discriminatory conduct based on gender or any other classification. Even if United, the plaintiff herein, was a female-dominated company and therefore a minority business enterprise as defined by applicable Maryland law,[21] and even if Jailcraft is seemingly a non-minority concern, and even if no County officials or other persons concerned with the 1993 Detention Center project are females or members of any minority, that does not provide any appropriate basis for the allegation that the County, or anyone else involved in the said process, took any action whatsoever of a discriminatory nature against United because United was a minority concern.

Leaving aside discrimination, plaintiff seems to be contending that plaintiff had a property interest in becoming the detention equipment subcontractor because plaintiff had been contacted by the architect, because Dashiell's successful bid included plaintiff as such subcontractor, and/or because United's bid was lower than that of Jailcraft. "Property interests are created and defined by state law." *Berlanti v. Bodman,* 780 F.2d at 299, citing *inter alia,* to *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The underlying statutory authority pursuant to which the County Commissioners acted in connection with the 1993 Detention Center project makes it clear that the County had the right to seek

---

20. *Id.* at 34. *See also id.,* Exhibit 16, February 15, 1994 Letter from Vitech Consulting Services, Inc. to County Attorney at 1–2; Complaint at ¶ 11.

21. *Id.,* Exhibit 16, February 15, 1994 Letter from Vitech Consulting Services, Inc. to County Attorney at 1–2; Complaint at ¶ 11.

and bring about the change in subcontractors which the County in fact brought about in this case. Accordingly, even if it be assumed *arguendo* that plaintiff had sufficient expectations that it would be awarded the subcontract if Dashiell was a successful bidder, so as to provide standing in this case for plaintiff to make any and all of its claims herein, including those for violation of its constitutional rights, plaintiff may not prevail in connection therewith since the change from United, the plaintiff herein, to Jailcraft, took place specifically as authorized by applicable state law. Therefore, plaintiff does not possess a property interest sufficient to create rights to procedural due process as provided by *Roth* and other authorities. Additionally, however, even if plaintiff does possess any such property interest, the procedures followed in this instance by defendant Board of Commissioners and by all concerned would appear totally in accord with applicable federal constitutional as well as state law. Thus, to sum it up, plaintiff is complaining about actions and non-actions taken by the County defendant in connection with which none of plaintiff's procedural or substantive due process rights were violated, even if plaintiff has established such rights, which it has not.

 As to United's claim of defamation, assuming that there was any statement made by defendant Board of Commissioners or any statement that could be attributed in whole or in part to said defendant, one such possible statement is that the County determined that it was advisable to utilize the same subcontractor, namely Jailcraft, with regard to detention equipment, as had performed similar duties during the construction in the 1980s and maintenance since that date. No such statement would appear to be critical of the performance of plaintiff, nor to be false or wrongful in any way.

> To recover for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm.... A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with that person.

*Rosenberg v. Helinski,* 328 Md. 664, 675, 616 A.2d 866 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). The record in this case discloses no false statement and certainly no false statement of a defamatory type.[22]

 Insofar as plaintiff's assertion of interference with contractual relations is concerned, the underlying statutes and documents make it clear, as discussed *supra,* that the County, Dashiell and any and all persons concerned acted fully in accordance with law

---

22. On January 11, 1994, Ms. Shade wrote a letter to the County Administrator in which she included the following paragraph:

> It has come to our attention that the detention equipment subcontractor, although pre-qualified during the bidding phase, does not actually have the required ten years of experience. In further investigation of this subcontractor, two of the four references submitted mentioned that United Prison subcontracted measurable percentages of their work to other companies and the secondary companies created problems for their projects; certainly, not an environment which would be of benefit to Caroline County.

There is no allegation—or proffer of evidence—in the record in this case indicating that anything set forth in the above quotation is false. Nor has plaintiff, in its Memorandum in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, or in any other pleading in this case, referred to said paragraph in that letter in connection with its defamation claim. Rather, plaintiff has simply included that January 11, 1994 letter reference as an exhibit and discussed its contents in connection with its equal protection claim. Plaintiff's November 21, 1995 Reply in Opp'n at 3, 14–15. Under the circumstances, the presence of that letter in the record in this case hardly supports plaintiff's summary judgment obligations. *See Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984) ("It is well established that a defendant moving for summary judgment has the burden of showing the absence of any genuine issue of material fact.... Once a defendant makes the necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contentions.") *See also* Fed.R.Civ.P. 56(e) ("When a motion ... is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.")

and with accepted procedures which were either known or totally could have been known and should have been known by plaintiff when plaintiff was involved in its efforts to obtain the subcontract. Whatever rights, if any, United may have had, they were not violated by anyone insofar as the record in this case discloses. Thus, in that context, there is no meritorious basis for plaintiff's contention that defendant interfered with any of plaintiff's contractual rights with Dashiell or anyone else.[23]

### Conclusion

For the reasons set forth in this opinion, summary judgment will be granted in favor of defendant in connection with each and all of plaintiff's claims in this case.

---

**23.** Under the circumstances in this case, it is not necessary for this Court to decide the issue of whether or not defendant is immune from liability. However, it would appear that defendant is entitled, pursuant to Md.Cts. & Jud.Proc.Code Ann. § 5–403(d), (e), to assert whatever common law immunity is available. Plaintiff appears to argue that the Local Government Tort Claims Act (LGTCA), Md.Cts. & Jud.Proc.Code Ann. § 5–401 *et seq.*, waives defendant's immunity in this case. But, "[t]he LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity.... [T]he LGTCA waives only those immunities the government could have in an action raised against its employee." *Khawaja v. City of Rockville,* 89 Md.App. 314, 325, 598 A.2d 489 (1991), *cert. granted,* 325 Md. 551, 601 A.2d 1114 (1992), *appeal dismissed,* 326 Md. 501, 606 A.2d 224 (1992). Thus, because the defendant here is a governmental entity, rather than a government employee, it would not appear that any statutory waiver is applicable.

In any event, defendant's common law immunity for performance of "governmental" as opposed to "proprietary" functions, *see Tadjer v. Montgomery County,* 300 Md. 539, 546, 479 A.2d 1321 (1984), is limited. Under Maryland law, counties and municipalities apparently do not have immunity in contract actions, *see Bd. of Educ. of Prince George's County v. Town of Riverdale,* 320 Md. 384, 389, 578 A.2d 207 (1990), or in suits based upon violations of constitutional rights, *see Ashton v. Brown,* 339 Md. 70, 101, 660 A.2d 447 (1995). Rather, the immunity of counties in Maryland is seemingly limited to tort actions in which a county has exercised a "governmental", as distinguished from a "proprietary", function.