25 A.3d 122

Jerry P. HANSEN

v.

CITY OF LAUREL, Maryland.

No. 78, Sept. Term, 2010.

Court of Appeals of Maryland.

July 15, 2011.

Suzanne M. Tsintolas (The Law Office of Suzanne M. Tsintolas, Rockville, MD), on brief, for Petitioner.

Victoria M. Shearer (Daniel Karp of Karpinski, Colaresi & Karp, P.A., Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

The parties here challenge us to interpret the pre-suit notice requirement of the 2007 iteration of the Local Government Tort Claims Act ("LGTCA"). Petitioner, Jerry Hansen ("Hansen"),[1] asserts that he complied, strictly or at least substantially, with the required notice provision of the LGTCA as regards Prince George's County (notice of a claim must be served on the county solicitor or attorney) by delivering written notice of his claims against the City of Laurel ("City") to the City Administrator. Respondent, the City, contests vigorously his assertions. Although the focus of the parties' arguments before this Court are aimed at whether Hansen's efforts were compliant at all with the LGTCA, the City argued in the trial court and the Court of Special Appeals also that Hansen did not plead expressly in his complaint satisfaction of

---

1. During the pendency of this appeal Mr. Hansen passed away. His counsel filed a notice substituting Mr. Hansen's wife as a party, pursuant to Maryland Rule 2–241. The City of Laurel did not object to this substitution.

the LGTCA notice provision. Such failure, the City averred, should prevent Hansen from pursuing his claim. We agree with the City's latter contention and, accordingly, do not decide whether Hansen's conduct complied with the applicable notice provision (although we shall comment in dicta, where appropriate, about some aspects of that dispute). As a result, we affirm the Court of Special Appeals's judgment, which affirmed the dismissal of Hansen's suit by the Circuit Court for Prince George's County.

## I.

We shall provide the relevant procedural facts, as well as some substantive background, for contextual purposes. No finder of fact has evaluated the credibility of any factual allegation because this case was disposed of ostensibly by the trial court through its grant of the City's motion to dismiss. Thus, we—like the Court of Special Appeals—derive the "facts" related here from Hansen's complaint (and, as it turns out, other pleadings and papers filed in the Circuit Court).

Hansen served as the City's "Chief Building Official" for seventeen years before his employment ended, against his will, in 2007. In the Spring of 2006, he experienced a heart attack, after which he assumed disabled status and did not seek to return to work with the City for a while. As the Court of Special Appeals recounted in its reported opinion in this case:

> In November 2006, he met with City officials and report-ed "he was ready, willing and able to work." He presented documentation from his physician showing that his medical condition would not prevent him from returning to work. [According to Hansen], the City "regarded [him] as having a permanent disability" and was "determined to convince him to voluntarily terminate his employment." Hansen insisted that he could return to work and was prepared to do so on December 26, 2006. Before then, City representatives con-tacted him and told him not to come in and that his last day

of employment would be January 2, 2007.[2]

Hansen "exhausted all administrative remedies and, within [90] days of receipt of a Notice of Right to Sue letter from the Baltimore District Office of the Equal Employment Opportunity Commission," filed suit [in the Circuit Court] on September 26, 2008.[3]

On February 26, 2009, the City filed a motion to dismiss [for failure to state a claim upon which relief can be granted]. In its supporting memorandum, it asserted that, "[i]n order to state a claim for unliquidated damages against a municipal entity, a plaintiff must allege, and must have given, statutory pre-litigation notice of intention to file a claim, as provided by Md.Code, Courts & Judicial Proceedings Article [ ("CJ"), §] 5–301, et seq., within 180 days 'after the injury.'" The City argued that Hansen "ha[d] not alleged that he satisfied the notice requirements of the [LGTCA], and indeed as far as [the City] [was] aware, he did not." The City did not request a hearing.

On March 5, 2009, Hansen filed an opposition to the City's motion to dismiss. He did not address the alleged deficiencies in his complaint. Rather, he characterized the City's motion as "assert[ing] [that] the City ... [had] not receive[d] notice within the statutory 180 days after the actual injury that any claims were pending against it with relation to [Hansen's] employment termination." He responded that [the City's] argument was "without factual foundation" and averred facts that were not included in his complaint. Those facts showed that Hansen had notified the City Administrator of his claim within the 180–day window.

In support of his new factual averments, Hansen attached a number of exhibits to his opposition. The exhibits, none of which were mentioned in the complaint, included: (1) a hand-delivered letter dated March 12, 2007, from Hansen's

2. As noted *infra,* Hansen served upon the City Administrator written notice of his claims on 12 March 2007.

3. Hansen's suit advanced theories of recovery based on age and disability discrimination under state and local laws prohibiting same.

lawyer to the City Administrator and the Deputy City Administrator setting forth the factual basis for Hansen's potential legal claim and proposing that "the parties pursue a non-adversarial resolution to [the] matter and, therefore, [seek] intervention from the City Administrator's Office prior to [Hansen's] filing a discrimination claim with [ ... the Prince George's County Human Rights Commission and the U.S. Equal Employment Opportunity Commission]"; (2) a document entitled "Charge of Discrimination," dated April 25, 2007, submitted to the Prince George's County Human Relations Commission and later sent to the City Administrator, providing the factual basis for Hansen's discrimination claim; and (3) a "Notice of Charge of Discrimination" from the U.S. Equal Employment Opportunity Commission, dated April 27, 2007, also sent to the City Administrator, notifying the recipient of a discrimination charge. Like the City, Hansen did not request a hearing.

*Hansen v. City of Laurel,* 193 Md.App. 80, 85–86, 996 A.2d 882, 885–86 (2010).

The three documents attached to Hansen's opposition to the City's motion to dismiss expressed his intent to file claims with "local and federal administrative agencies," to wit, the Prince George's County Human Rights Commission and the U.S. Equal Employment Opportunity Commission. The documents did not reflect expressly an intent to file a complaint or claim in the Circuit Court for Prince George's County or any other court. Hansen's proffered pre-suit notice to the City Administrator made no reference, explicitly or otherwise, to the LGTCA. On 10 March 2009:

[T]he City filed a reply to Hansen's opposition. Noting that Hansen had "attache[d] to his opposition several pieces of paper which were neither referred to in the Complaint nor attached to the Complaint," the City argued that, those "pieces of paper," if considered, showed that Hansen could not prove compliance with the LGTCA notice requirement. According to the City, the LGTCA statute required Hansen to give notice of the claim to the "City Attorney." Thus, sending a letter and charges of discrimination to the City

Administrator did not satisfy the statutory notice require-
ment. The City asserted that "[i]t is not sufficient for a
claimant simply to give some notice to some representative
of the City." The City further argued that, even if the City
Administrator were a proper person to receive notice under
the LGTCA, the letter and charges of discrimination were
not sufficient "notice of a suit for unliquidated damages."
[Without issuing a written opinion,] ... the circuit court
granted the City's motion to dismiss [by order of 13 April
2009]. (As neither party had requested a hearing, none was
held.) The order states: "Upon consideration of Defen-
dant's Motion to Dismiss and any response thereto, good
cause therefor having been shown, it is this 9th day of April,
2009, by the Circuit Court for Prince George's County
**ORDERED** that the same be and hereby is **GRANTED**."
*Hansen,* 193 Md.App. at 86–87, 996 A.2d at 886.

In deciding Hansen's appeal of the Circuit Court's dismissal
of his suit, the intermediate appellate court acknowledged in
its opinion the City's contention that Hansen's complaint failed
to plead satisfaction of the notice provision of the LGTCA, but
grounded its analysis instead on whether Hansen's sending of
notice to the City Administrator complied strictly or substan-
tially with the notice requirement of the LGTCA prevailing at
the relevant time of occurrence of Hansen's operative facts.[4]

---

4. When Hansen's cause of action accrued on or about 2 January 2007,
the operative iteration of § 5–301 of the LGTCA provided that "[l]ocal
government" includes, among other entities, "a municipal corporation
established or operating under Article 23A of the Code[.]" Maryland
Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article
("CJ"), § 5–301. Section 5–304 read:

(b) Notice required.—Except as provided in subsection[ ] ... (d) of
this section, an action for unliquidated damages may not be brought
against a local government or its employees unless the notice of the
claim required by this section is given within 180 days after the
injury.
(c) Manner of giving notice.—
(1) Except in Anne Arundel County, Baltimore County, Harford
County, and Prince George's County, the notice shall be given in
person or by certified mail ... to the county commissioner, county

*See Hansen,* 193 Md.App. at 89, 996 A.2d at 888 ("The only controversy for purposes of our discussion concerns whether the City Administrator was the proper recipient of notice under the LGTCA....").  It concluded that Hansen did not comply strictly with the LGTCA because he delivered his notice to the City Administrator, not to the County Attorney of Prince George's County, as specified in § 5–304(c)(2) of the

---

council, or corporate authorities of a defendant local government, or:
(i) In Baltimore City, to the City Solicitor;
(ii) In Howard County, to the County Executive;  and
(iii) In Montgomery County, to the County Executive.
(2) In Anne Arundel County, Baltimore County, Harford County, and Prince George's County, the notice shall be given in person or
by certified mail ... to the county solicitor or county attorney.
CJ § 5–304.  According to the plain words of the statute, a plaintiff whose cause of action was "[i]n" Prince George's County should provide notice to "the county solicitor or county attorney."

We note that in 2009 (by the time Hansen's claims proceeded to litigation), the Legislature amended the LGTCA to provide an alternate means to give notice in, among the implicated jurisdictions, Prince George's County.  Section 5–304(c) then and now states that:
(1) The notice required under this section shall be given in person or by certified mail....
(2) Except as otherwise provided, if the defendant local government is a county, the notice required under this section shall be given to the county commissioners or county council of the defendant local government.
(3) If the defendant local government is:
(i) Baltimore City, the notice shall be given to the City Solicitor;
(ii) Howard County or Montgomery County, the notice shall be given to the County Executive;  and
(iii) In Anne Arundel County, Baltimore County, Harford County, or Prince George's County, the notice shall be given to the county solicitor or
(4) *For any other local government, the notice shall be given to the corporate authorities of the defendant local government.*
Maryland Code (1974, 2006 Repl.Vol., 2010 Supp.), CJ § 5–304 (emphasis added).  Thus, for claims accruing after the effective date of the 2009 amendment, a plaintiff whose cause of action was "[i]n" Prince George's County could provide notice presumably to the "county solicitor or county attorney" or "the corporate authorities of the defendant local government."  Essentially, Hansen's main arguments before us seek our blessing of his 12 March 2007 service of notice of his claims on the City Administrator as "the corporate authorit[y]" of the defendant local government."  According to our review of the record, Hansen did not assert that he served notice of his claims on the county attorney.

version of the statute in effect at the time of accrual of Hansen's claims. *See Hansen,* 193 Md.App. at 92–93, 996 A.2d at 890. Assuming, without deciding, that Hansen, in the alternative, in 2007 could have sent notice to the "corporate authorities of [the] defendant local government," § 5–304(c)(1), the Court of Special Appeals held that notice should have been provided to the Mayor or City Council, not the City Administrator. *See Hansen,* 193 Md.App. at 93, 996 A.2d at 890.

With respect to whether substantial compliance with the LGTCA requirement occurred, the Court of Special Appeals deduced that Hansen found no refuge there either, as he "notified the City Administrator," a "position that is not charged with investigating tort claims against the City." *Hansen,* 193 Md.App. at 96, 996 A.2d at 892; *Hansen,* 193 Md. App. at 95, 996 A.2d at 891 (" '[T]he tort claimant has substantially complied with the notice provisions of the LGTCA' " where he or she " 'provides the local government, through the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function, the information required by § 5–304[ ] . . ., who thus acquires actual knowledge within the statutory period . . . .' " (quoting *Faulk v. Ewing,* 371 Md. 284, 302, 808 A.2d 1262, 1274 (2002) (citation omitted))).

■ Hansen petitioned us for a writ of certiorari, which we issued, *Hansen v. Laurel,* 415 Md. 607, 4 A.3d 512 (2010), to consider potentially whether "the lower court erred as a matter of law in holding a city administrator is not a proper recipient or 'corporate authority of the defendant local government' pursuant to CJ [§] 5–304(c)(4)?" After examining the record, we conclude that addressing the precise question pressed by the parties upon us would be injudicious on the particular circumstances of this case, given the omission in Hansen's complaint that he pleaded fulfillment of the notice requirement under the LGTCA.[5] We explain.[6]

_____

5. We do not determine that satisfaction of the LGTCA notice provision is a jurisdictional prerequisite, such that a plaintiff must plead compli-

ance in order to demonstrate facially that the court possessed jurisdiction to entertain the case. Had we done so, we would have been compelled to dismiss this appeal outright. *But cf. Henderson v. United States*, 517 U.S. 654, 673, 116 S.Ct. 1638, 1648, 134 L.Ed.2d 880, 896 (1996) (Scalia, J., concurring) ("I write separately to make clear that it is not my view, and I do not understand the Court to hold, that no procedural provision can be jurisdictional. It assuredly is within the power of Congress to condition its waiver of sovereign immunity upon strict compliance with procedural provisions attached to the waiver, with the result that failure to comply will deprive a court of jurisdiction.").

First, the LGTCA does not waive the limited immunity enjoyed by local governments—*see* Karen J. Kruger, *Governmental Immunity in Maryland: A Practitioner's Guide to Making and Defending Tort Claims*, 36 U. BALT L.REV. 37, 65 (2006) ("The immunity afforded to local governments is considered to be 'much narrower than the immunity of the State.' ") (quoting *Bd. of Educ. v. Mayor of Riverdale*, 320 Md. 384, 390, 578 A.2d 207, 210 (1990))—which protects them from the direct actions (including *respondeat superior, see DiPino v. Davis*, 354 Md. 18, 47–48, 729 A.2d 354, 370 (1999)) of non-constitutional tort claimants. *See Williams v. Maynard*, 359 Md. 379, 394, 754 A.2d 379, 388 (2000) ("[T]he LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments. . . ."); *Ennis v. Crenca*, 322 Md. 285, 294, 587 A.2d 485, 490 (1991) ("[T]he [LGTCA] was enacted to protect local government employees from excessive litigation."); *Williams v. Mayor of Baltimore*, 128 Md.App. 1, 35, 736 A.2d 1084, 1102 (1999), *rev'd on other grounds, Williams v. Mayor of Baltimore*, 359 Md. 101, 753 A.2d 41 (2000) ("The LGTCA . . . did not authorize bringing a suit directly against Baltimore City."); *Williams v. Montgomery County*, 123 Md.App. 119, 126, 716 A.2d 1100, 1103 (1998) ("Under the LGTCA, a plaintiff may not sue a local government, such as Montgomery County, directly but must sue, instead, the employee." (citation omitted)); *Williams v. Prince George's County*, 112 Md.App. 526, 552, 685 A.2d 884, 897 (1996) ("[The LGTCA] does not provide a method for directly suing the County or other local governments." (citation omitted)); *Khawaja v. Rockville*, 89 Md.App. 314, 325, 598 A.2d 489, 494 (1991) ("The LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity."); *Pavelka v. Carter*, 996 F.2d 645, 649 (4th Cir.1993) ("The LGTCA does not waive local governmental immunity when a local governmental entity is sued in its own capacity.") (citation omitted); *Dawson v. Prince George's County*, 896 F.Supp. 537, 539 (D.Md.1995) ("[W]hile the [local government] is financially responsible for a judgment against its employees, the Act does not create liability on the part of the [local government]."); Kruger, 36 U. BALT. L. REV. at 63 ("[A] plaintiff must sue an employee and not the governmental entity. . . . A suit that names only the governmental entity is defective and subject to a motion to dismiss; one may not sue the local government directly." (footnotes omitted)); *see also Housing Auth. v. Bennett*, 359 Md. 356, 359, 754 A.2d 367, 368–69 (2000) ("[L]ocal governments have no immunity in tort actions based on violations of the Maryland Constitution.").

Second, the LGTCA does not waive any immunity enjoyed by "public officials" and other similar representatives of local government against potential tort claimants. *See* Md.Code (1974, 2006 Repl.Vol., 2010 Supp.), CJ § 5–303(d) ("[T]his subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.").

Third, even if the LGTCA waived the governmental immunity of local governments, such that the LGTCA created new liability on behalf of the local governments, we would not conclude necessarily that its notice provision is a jurisdictional condition precedent, as opposed to (as we explain today) a procedural condition precedent. *See State v. Sharafeldin*, 382 Md. 129, 143 n. 5, 854 A.2d 1208, 1215 n. 5 (2004) (distinguishing between the concepts of subject matter jurisdiction and immunity, observing that a time requirement for bringing a breach of contract action against the State, contained in Md.Code (1984, 2009 Repl.Vol.), State Government ("SG") Art., § 12–201, is a "condition to the waiver of immunity," and failure to satisfy it results in dismissal because "the State remains immune from suit, not because the court is without jurisdiction"); *see id.* ("The courts were never deprived of fundamental jurisdiction over the State and its agencies; even before the general waiver of immunity, the State and its agencies were subject to suit for breach of contract if the Legislature authorized them to be sued and funds were available to pay any judgment that might be rendered against them." (citation omitted)). *Sharafeldin*, however, would not be our final say on the subject.

At bottom, the LGTCA waives the governmental immunity that local governments might otherwise enjoy in a suit brought by an *employee*, who is sued for tortious conduct and desires a legal defense and/or indemnification out of the pocket of his or her local government-employer. *See* CJ § 5–303(b)(2) ("A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee...."); *Mayor of Baltimore*, 128 Md.App. at 34, 736 A.2d at 1102 ("The ... (LGTCA) essentially established a set of legal entitlements and legal obligations *between the municipalities and their employees*, not between the municipalities and citizens at large." (emphasis added)); *Khawaja*, 89 Md.App. at 325, 598 A.2d at 494 ("[T]he LGTCA waives only those immunities the government could have in an action raised against its employee."); *Pavelka*, 996 F.2d at 649 ("The LGTCA does have a function[, which] ... is to protect local government employees from suits and judgments on alleged torts committed by them within the scope of their employment ...." (citation omitted)). In a sense, then, under the LGTCA, the local government is merely the insurer and the local government employee the insured. *See Nam v. Montgomery County*, 127 Md.App. 172, 184, 732 A.2d 356, 362–63 (1999) ("[Under the LGTCA, t]he governmental entity's liability is analogous to a public liability policy on an automobile. The insurance company is liable for such damages as its assured may inflict, but, generally speaking, the insurance company is not an entity which may be sued for its assured's torts."); Kruger, 36 U. BALT. L.REV. at 63 ("Under the LGTCA, the local government serves as an insurer that is required to defend and indemnify its employees for torts they commit ... even though the local government, itself, *cannot be held liable.*"

## II.

■ We choose to address first (and ultimately only) the City's contention, preserved at each previous level of this litigation, that Hansen was required to plead affirmatively in his complaint satisfaction of the notice obligation of the LGTCA. Although the LGTCA notice provision may not be jurisdictional, as explained in footnote 5 *supra*, failure to plead satisfaction, if required, carries consequences nonetheless.

---

(emphasis added) (footnote omitted)). The passage of the LGTCA did not impact the substantive rights of tort claimants—they remained *unable* to sue directly (that is, name as the singular defendant) a local government for many tort violations, while remaining *able* to sue directly a local government employee, as they had before adoption of the LGTCA. *See e.g., Pavelka*, 996 F.2d at 649 ("Governmental immunity from negligence torts in Maryland ... does not ... extend to 'mere government employees or agents' performing ministerial functions ...." (citing *James v. Prince George's County*, 288 Md. 315, 323–24, 418 A.2d 1173, 1178 (1980))). The LGTCA affected plaintiffs in two ways, however, placing a procedural bar—*i.e.*, the notice provision, akin to the notice provision in predecessor statutes—in the path of putative plaintiffs, and requiring successful plaintiffs to seek satisfaction of judgments from the local government-employer.

6. Hansen must plead satisfaction of the notice provision in his complaint before analysis of the question of sufficiency of compliance is ripe. Affecting our inquiry in this regard is the fact that Hansen, in opposing the motion to dismiss, attached various documents, which were not included in or appended to the complaint. The trial court, in acting on the motion, without either elaboration of which grounds it relied on or expressing an exclusion from its consideration of these extrinsic documents, treated the matter effectively as a summary judgment motion. The intermediate appellate court recognized this effect, pursuant to Maryland Rule 2–322(c). *See Hansen v. City of Laurel*, 193 Md.App. 80, 88, 996 A.2d 882, 887 (2010) (quoting Rule 2–322(c) which holds that "[i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.") We treat it likewise. *See* Rule 2–501(a) ("Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.").

A. *Satisfaction of the LGTCA Notice Provision is a Condition Precedent to Maintaining Suit Against a Local Government.*

It is a longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government [7] or its employees. *See Rios v. Montgomery County,*

7. As stated in footnote 5, under the LGTCA, a plaintiff may not sue directly a local government for many kinds of alleged tort violations. A plaintiff could bring against those governments, however, claims that were available prior to the adoption of the LGTCA. *See Bennett,* 359 Md. at 374, 754 A.2d at 376 (2000) ("The [bill enacting the LGTCA] strongly suggest[s] a legislative intent that the substantive sections of the LGTCA ... apply to the actions against employees expressly dealt with in the LGTCA and also to actions directly against local governments *which are authorized under locally enacted law.*" (emphasis added)). For instance, a plaintiff may assert a common law claim for nuisance. *See Bd. of Educ. of Prince George's County v. Town of Riverdale,* 320 Md. 384, 388, 578 A.2d 207, 209 (1990) ("In Maryland, counties and municipalities have never been accorded immunity from nuisance suits." (citation omitted)). Moreover, a plaintiff may bring a statutorily-authorized action, *e.g., Maynard,* 359 Md. 379, 754 A.2d 379 (interpreting Md.Code (1974, 2009 Repl.Vol.), Transportation Art., § 17–107 and CJ § 5–524); *Pavelka,* 996 F.2d at 650 ("The doctrine of governmental immunity reflects the public's interest in not paying tort judgments with public funds for torts arising out of the performance of governmental functions for the benefit of all. The Maryland legislature, however, has recognized that other policy considerations trump this one in certain cases. One such case is that of providing minimal recovery for vehicular accidents, where the legislature has privileged, to a limited extent, citizens' interest in securing compensation for injuries negligently inflicted upon them. That policy is embodied in Maryland Transp. Code Ann. § 17–101 *et seq.*").

Importantly, the notice requirement of the LGTCA, among other of its provisions, apply to these claims as well. *See Maynard,* 359 Md. at 386, 391, 754 A.2d at 383, 386 (observing that unlike the Maryland Tort Claims Act, which applies only to "action[s] brought under this subtitle," the "plain language ... of the LGTCA indicates a legislative intent to make the notice requirement broadly applicable to tort actions brought directly against local governments"). Whether the same requirement applies to constitutional claims, which plaintiffs may bring directly against local governments, remains uncertain. We have intimated as much, however. *See Prince George's County v. Longtin,* 419 Md. 450, 19 A.3d 859 (2011) (applying the LGTCA notice requirement to a plaintiff's constitutional claims); *Ashton v. Brown,* 339 Md. 70, 108 n. 19, 660 A.2d 447, 465 n. 19 (1995) ("[T]here is no exception in the [LGTCA] for constitutional torts.... The parties in this case[, who

386 Md. 104, 127, 872 A.2d 1, 14 (2005) (reaffirming that "the LGTCA notice requirements are a condition precedent to maintaining an action against a local government or its employees") (citations omitted); *Faulk*, 371 Md. at 304, 808 A.2d at 1275 ("[N]otice requirements of th[e] type [contained in the LGTCA] have been viewed as conditions precedent to maintaining subsequent legal actions." (citations omitted)); *Grubbs v. Prince George's County*, 267 Md. 318, 320–21, 297 A.2d 754, 755 (1972) (interpreting the notice provision of the LGTCA predecessor statute, Md.Code (1957, 1972 Repl.Vol.) Art. 57, § 18,[8] "as a condition precedent to the right to maintain an action for damages") (citations omitted); *Neuenschwander v. Washington Suburban Sanitary Comm'n*, 187 Md. 67, 77, 48 A.2d 593, 599 (1946) (stating that the notice provision of "the Act of 1943,"[9] another ancestor of the current LGTCA, is "a condition precedent to the right to maintain the suit") (citation omitted), *overruled on other grounds by statute as stated in Arnold v. Prince George's County*, 270 Md. 285, 311 A.2d 223 (1973); *Madore v. Balt. County*, 34 Md.App. 340, 345, 367 A.2d 54, 56 (1976) (construing the notice provision of Art. 57, § 18 as "a condition precedent to the right to maintain the suit")

---

raised constitutional and non-constitutional claims, however,] would appear to have waived [its] procedural requirements.").

8. For comparison's sake, Md.Code (1957, 1972 Repl.Vol.), Art. 57, § 18(a) provided:

(a) No action shall be maintained and no claims shall be allowed against any municipal corporation or against any county or Baltimore City for unliquidated damages for any injury or damage to person or property unless within 180 days after the injury or damage was sustained, written notice setting forth the time, [*etc.*] . . . shall be presented . . . to the county commissioners, county council, the corporate authorities of the municipal corporation. . . .

9. The Act of 1943 provided that:

No action shall be maintained and no claim shall be allowed against any county or municipal corporation of Maryland, for unliquidated damages for any injury or damage to person or property unless, within ninety days after the injury or damage was sustained, written notice thereof setting forth the time, [*etc.*] . . . shall be presented . . . to the City Solicitor of Baltimore City, the County Commissioners, or the corporate authorities of the municipal corporation. . . .

Chapter 809, § 18 of the Acts of 1943.

(citation omitted); *Renn v. Bd. of Comm'rs,* 352 F.Supp.2d 599, 602 (D.Md.2005) ("Maryland courts have consistently held that the LGTCA[ ] notice requirement is a condition precedent to the right to maintain an action for damages." (citation omitted)); *Lyles v. Montgomery County,* 162 F.Supp.2d 402, 404 (D.Md.2001) ("The [LGTCA] notice is a condition precedent to the right to maintain an action for damages . . . ." (citations omitted)); 5–71 ANTIEAU ON LOCAL GOVERNMENT LAW § 71.08 (2d ed. 2009) ("Since legislatures can withhold the opportunity to sue local governments, they can impose whatever conditions precedent to suit they deem proper. Conditions precedent to suit against local governments are found in nearly all State statutes and local charters." (footnote omitted)).

### B. *A Plaintiff Must Plead Satisfaction of the Condition Precedent That Is the LGTCA Notice Requirement.*

■ Ordinarily, a plaintiff must plead affirmatively satisfaction of a condition precedent. *See* Maryland Rule 2–303(b) ("A pleading shall contain . . . such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense."); Rule 2–304(b) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver *generally* that all conditions precedent have been performed or have occurred." (emphasis added)); *Cannon v. McKen,* 296 Md. 27, 38, 459 A.2d 196, 202 (1983) ("It is a basic rule of law that where a cause of action is dependent upon a condition precedent, plaintiff must allege performance of such condition or show legal justification for nonperformance."); *Jewell v. Malamet,* 322 Md. 262, 272, 587 A.2d 474, 479 (1991) (same).

At the very least, our precedent seems to require that tort claimants plead affirmatively, albeit generally, this *particular* condition precedent, *i.e.,* the LGTCA notice requirement. In construing the notice provision in the comparable Act of 1943, *see* footnote 9 *supra,* the *Neuenschwander* Court explained that:

It is a fundamental doctrine that the Legislature may grant or deny to individuals a right of action against municipal corporations for injuries resulting from the negligent manner in which streets are maintained. When the Legislature creates a municipal corporation as part of the machinery of government of the State, it is within its province to adjust the relative rights of the corporation and the citizens. The Legislature has thus the power to enact a statute requiring that, before suit for damages shall be instituted against a municipal corporation, a written notice of the claim shall be presented to the municipal authorities within a specified period after injury or damage is sustained. *In order to maintain such an action, the declaration must allege that the notice prescribed by the statute was duly presented, for the notice is a condition precedent to the right to maintain the suit. If the declaration does not contain such an allegation, the defendant can object either by demurrer or plea.*

187 Md. at 76–77, 48 A.2d at 599 (emphasis added) (citations omitted).

In other cases, this Court, the Court of Special Appeals, and the U.S. District Court for the District of Maryland have reiterated the same canon. *See Cotham v. Bd. of County Comm'rs,* 260 Md. 556, 562–64, 273 A.2d 115, 119 (1971) (explaining the state of Maryland local government tort law by quoting favorably the above passage of *Neuenschwander,* 187 Md. at 76–77, 48 A.2d at 599); *Engle v. Cumberland,* 180 Md. 465, 469, 25 A.2d 446, 448 (1942) (interpreting the notice provision in the Act of 1922 [10]—which concerned also the right to sue local governments—and ruling that "the failure to make

---

**10.** The Act of 1992 provided that:

[O]ne claiming to have been injured must prove notice in writing from anyone to the City Engineer and Mayor at least twenty-four hours before the injury, and within thirty days of the injury the one injured or someone on his behalf shall give notice of the time, place and extent of injury to the Mayor or City Clerk; and unless these notices be given, the "City of Cumberland shall never be liable."

*Engle v. Cumberland,* 180 Md. 465, 469, 25 A.2d 446, 448 (1942) (quoting Chapter 96, § 89 of the Acts of 1922).

such allegations [of notice being given] can be raised either by demurrer or plea") (citations omitted); *Madore,* 34 Md.App. at 342, 367 A.2d at 56 (1976) (interpreting the notice provision in Art. 57, § 18 and concluding that "compliance with the notice statute should be alleged in the declaration as a substantive element of the cause of action") (citations omitted); *Hargrove v. Mayor of Baltimore,* 146 Md.App. 457, 462–63, 807 A.2d 149, 152 (2002) (" '[T]ypically, a plaintiff must notify the municipality to be sued, and indeed plead notification in the complaint, in compliance with § 5–404' " [11] of the LGTCA) (quoting favorably *Downey v. Collins,* 866 F.Supp. 887, 889 (D.Md.1994)); *Renn,* 352 F.Supp.2d at 602 ("[C]ompliance with the [LGTCA] notice provision should be alleged in the complaint as a substantive element of the cause of action." (citation omitted)); *Curtis v. Pracht,* 202 F.Supp.2d 406, 414 (D.Md.2002) (same); *Lyles,* 162 F.Supp.2d at 404 (same); *Bibum v. Prince George's County,* 85 F.Supp.2d 557, 564 (D.Md.2000) (same); MARYLAND RULES COMMENTARY at 300 ("Certain causes of action require that conditions precedent to entitlement to relief be pleaded as an element of the cause of action.... Statutory provisions may also create conditions precedent.").

Other jurisdictions have considered whether "a plaintiff's pleading need ... show compliance with applicable statutory ... provisions requiring the filing of notice with ... a municipality prior to instituting a suit" for certain tort actions. V. Woerner, *Necessity and Sufficiency of Plaintiff's Pleading of Having Given Requisite Notice or Presented Claim to Municipality or Other Public Body,* 83 A.L.R.2d 1178, 1 (1965). "Most ... subscribe to the view that the plaintiff's pleading must allege compliance with such applicable provisions, on the theory that the requirement for notice or claim is a condition precedent to the plaintiff's right of action...." *Id.; see* ANTIEAU ON LOCAL GOVERNMENT LAW § 39.01 (2d ed. 2009) ("Plaintiffs must ordinarily plead compliance with statutory notice

---

11. The LGTCA notice provision was recodified later, without substantive change, at § 5–304.

provisions governing tort claims against local government defendants." (footnote omitted)). *But see id.* ("[U]nder a number of statutes, the failure of a plaintiff to give notice to a local government is a matter of defense that must be pleaded by the local government." (footnote omitted)); ANTIEAU ON LOCAL GOVERNMENT LAW at § 71.08 ("Courts differ on whether the plaintiff must plead compliance with conditions precedent or the defendant local government must plead noncompliance."). Maryland rules and decisions reach somewhat of a compromise—plaintiffs must allege the performance of conditions precedent, but they may do so generally. *See* Rule 2–304(b). It is up to defendants, then, to show that "a particular condition precedent has in fact [not] been satisfied...." MARYLAND RULES COMMENTARY at 300.

### C. *But Is the LGTCA Notice Provision Actually a Condition Precedent?*

Some may argue, despite the longstanding nature of the principle, that the LGTCA notice provision is not a condition precedent actually. We derive our understanding of what constitutes a "condition precedent" from the Supreme Court, which, in 1886, was confronted by statutes that created new causes of action. These statutes also imposed time limitations. The Supreme Court said that:

> The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to *the right to sue at all.*

*The Harrisburg,* 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358, 362 (1886) (emphasis added).[12] In the present case, one

---

12. In *Waddell v. Kirkpatrick,* 331 Md. 52, 59 n. 5, 626 A.2d 353, 356 n. 5 (1993), we explained that:

   *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) was overruled by *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), in which the Supreme Court held that

may observe (as footnotes 5 and 7 make clear) that the LGTCA does not create any new causes of action, or "rights." Rather, it merely shapes how previously-available causes of action may proceed. Thus, a "condition precedent" analysis is inconsonant, or so the argument goes.

It has been surmised that, by enacting the LGTCA, the Legislature responded, at least in part, to the perceived threat that tort suits "discourage" local government employees from "vigorous[ly] proseucti[ng] ... their duties." *Pavelka v. Carter*, 996 F.2d 645, 650 (4th Cir.1993). To affect that end, the Legislature could have "simply extend[ed] governmental immunity to those [local government-employee] tortfeasors," albeit "at the expense of tort victims," who would then have no recourse for their injuries. *Id.; see also* MARK M. VIANI, MARYLAND LOCAL GOVERNMENT LAW AND STRUCTURE 1–A (1999) ("[I]n practice, every incorporated municipality remains subject to the absolute control of the General Assembly."). In other words, the Legislature could have tweaked simply employees' tort liability exposure. Instead, "it simply *shifted* the cost of employee negligence[, *i.e.*, tort damages exposure,] ... to a party better able to pay, their local government employer...." *Pavelka*, 996 F.2d at 650 (emphasis added). As a tradeoff for this shifting, the Legislature altered the terms under which a plaintiff could bring already-available causes of action, so as to give local governments fair notice of tort suits, for which they would be responsible financially. *See* CJ § 5–304(b)(1) ("[A]n action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury."); *Martino v. Bell*, 40 F.Supp.2d 719, 722 (D.Md.1999) ("In conjunction with shifting some

_____

the common law of admiralty provides a cause of action for wrongful death. This Court has not retreated from the reasoning. *See Slate v. Zitomer*, 275 Md. 534, 542, 341 A.2d 789, 794 (1975), *cert. denied*, 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976); *Smith v. Westinghouse Elec.*, 266 Md. 52, 55–56, 291 A.2d 452 (1972); *Cotham and Maldonado v. Bd. [of County Com'rs. for Prince Georges County]* 260 Md. 556, 563, 273 A.2d 115, 120 (1971).

financial responsibility to local governments, the LGTCA requires a potential plaintiff to give the government notice of his claim within 180 days of the injury as a prerequisite to filing suit against a local government or one of its employees." (citation omitted)); *Ashton v. Brown*, 339 Md. 70, 104, 660 A.2d 447, 464 (1995) ("[T]he General Assembly has recently enacted the [LGTCA], which shifts financial liability for wrongs committed by local government officials, acting in the scope of their employment and without malice, from the public officials to the local government entity itself." (citation omitted)); Karen J. Kruger, *Governmental Immunity in Maryland: A Practitioner's Guide to Making and Defending Tort Claims*, 36 U. BALT. L.REV. 37, 63 (2006) ("The LGTCA does not waive the governmental immunity of the local government; thus, the LGTCA does not create liability on the part of the local government, but does create financial responsibility for the government for the non-malicious acts of its employees." (footnotes omitted)).

With respect to tort claimants (as opposed to tortfeasor-employees), the General Assembly was shifting financial obligations, rather than changing substantive rights. The Legislature left intact all common law and statutory causes of action. At the same time, it clarified what procedural requirements tort claimants must satisfy in order to maintain suit. *See* ANTIEAU ON LOCAL GOVERNMENT LAW at § 71.08 ("Where a right against a local government has been created by the legislature, it may be circumscribed by procedural requirements in any way the legislative body sees fit."). The fact that the statutes creating some substantive rights—*see* footnote 7 *supra; Williams v. Maynard*, 359 Md. 379, 754 A.2d 379 (2000) (interpreting Md.Code (1974, 2009 Repl.Vol.), Transportation Art., § 17–107 and CJ § 5–524)—and the procedural requirements are different is, in our view, inapposite. The way in which a plaintiff may bring a claim is connected fundamentally to the type of claims that a plaintiff may bring, such that whatever restrictions the General Assembly imposes should be deemed "conditions precedent."

## III.

■ We are aware, if not understanding, that pleading satisfaction of the LGTCA notice obligation may not be evident immediately to a potential tort claimant. In the case *sub judice,* however, the City advised Hansen of the pleading shortcoming through its motion to dismiss. Hansen did not amend his complaint, however, which he could have accomplished without leave of the trial court, pursuant to Rule 2–341(a). Nor did he dismiss voluntarily and refile his complaint. *See* Rule 2–506(a). After the trial court granted the motion to dismiss/motion for summary judgment, Hansen also did not seek leave of the trial court to file an amended complaint. *See* Rule 2–322(c) ("If the court orders dismissal, an amended complaint may be filed only if the court expressly grants leave to amend."). He likewise did not file a motion to alter or amend the trial court's judgment. *See* Rule 2–534 ("In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court . . . may amend its findings . . . , may enter new findings or new reasons, may amend the judgment, or may enter a new judgment.").

Rather, confronting more frontally the tendered grounds of the motion, Hansen tendered documents, which he proclaimed as "indisputable evidence that ample notification of pending tort claims was received by the City of Laurel within 180 days of the injury and the objective of the [LGTCA] was realized." Assuming, without deciding, that appending such documents in this manner and at that point in a case may compensate for a plaintiff's failure to plead satisfaction of the LGTCA notice provision, the City would prevail nonetheless. Hansen attached the documents and referred to them in his response to the City's motion to dismiss, but not in his complaint. *See* 83 A.L.R.2d 1178, at 6 ("[C]ourts have rarely discussed . . . the propriety of incorporating the notice or claim *in the complaint* either by reciting or quoting its contents or by attaching a copy as an exhibit to the complaint and incorporating it by reference . . . ." (emphasis added)). Hansen's documents also expressed a singular intent to file administrative claims with

government agencies, as opposed to "an action for unliquidated damages" in a circuit court.[13] CJ § 5–304(b)(1); Rule 1–202 (" 'Action' means collectively all the steps by which a party seeks to enforce any right *in a court* . . . ." (emphasis added)). While less relevant were we to engage in a substantial compliance analysis, this fact impacts our analysis of whether Hansen *plead* satisfaction of certain statutory conditions precedent, *i.e.,* the LGTCA notice requirement.[14] *See Moore v.*

---

**13.** In the relevant hand-delivered letter, dated 12 March 2007, to the City Administrator and the Deputy City Administrator, Hansen explained the factual basis of his potential claim and proposed "the parties pursue a non-adversarial resolution . . . prior to his filing . . . discrimination claim[s] with the local and federal administrative agencies." "Should we not hear from you prior to April 1, 2007," he advised that he would "file . . . charge[s] of discrimination with the Prince George's County Human Rights Commission and U.S. Equal Employment Opportunity Commission."

**14.** Before this Court, Hansen contends that his attempts to provide notice constitute substantial compliance. Conducting a substantial compliance analysis would not be appropriate where a plaintiff did not plead, in the first instance, any manner of satisfaction of the condition precedent. Indeed, whether one complied actually or substantially with the LGTCA notice provision (and, thereby, fulfilled its purpose) is one thing, but pleading generally satisfaction of the LGTCA conditions precedent is quite another. These are distinct questions.

Even if we were to conflate the two and consider a substantial compliance analysis apropos, Hansen would remain unsuccessful on the well-plead facts of this case. We have held, in relevant part, that the purpose of the notice provision is "to . . . apprise[ a local government] of its possible liability at a time when it could conduct its own investigation" and that "substantial compliance . . . may . . . satisfy the [LGTCA] where th[is] purpose . . . is fulfilled." *Moore v. Norouzi,* 371 Md. 154, 167–68, 807 A.2d 632, 640–41 (2002) (internal quotation marks and citations omitted). We have not left this general declaration to drift on the wind, however. To establish substantial compliance, a plaintiff must exert *"some effort* to provide the requisite notice," and, *"in fact,* [notice] must be provided. . . ." *Moore,* 371 Md. at 171, 807 A.2d at 643 (emphasis added) (citations omitted).

In *Moore,* we chiseled further, in sharper relief, this broad concept, stating:

We agree with the Amicus Maryland Trial Lawyers Association, "substantial compliance turns on ensuring that the County [or local government] has sufficient actual notice to perform a proper and timely investigation[,]" [*see* A]micus [C]uriae brief in No. 121, at 30[.]. *Consequently,* where the tort claimant provides the local government, through the unit or division with the responsibility for investigating

tort claims ..., or the company with whom the local government or unit has contracted for that function, the information required by § 5–304(b)(3) to be supplied, who thus acquires actual knowledge within the statutory period, the tort claimant has substantially complied with the notice provisions of the LGTCA.

371 Md. at 178, 807 A.2d at 646–47 (emphasis added).

Stated another way, a tort claimant complies substantially with the LGTCA notice provision where he or she not only endeavors, or makes "some effort," to provide the information called out in § 5–304 to the division, unit, or contractee responsible for investigating tort claims, but actually does so. *See* Brief for Maryland Trial Lawyers Association, Amicus Curiae Supporting Petitioners, *Moore v. Norouzi*, 371 Md. 154, 807 A.2d 632 (2002), at 30 ("There has been substantial compliance with the notice provisions of the [LGTCA] where the governmental unit or contractee bearing the direct responsibility for investigating alleged tort claims has *actual knowledge* sufficient to begin its investigation within the statutory period." (emphasis omitted and added)); Brief for Maryland Trial Lawyers Association, at 30–31 ("[N]otice is most effective when *actually received* ... by the entity directly responsible for th[e] investigation." (emphasis added)). We trust, as a legal presumption, that a tort claimant who provides notice to the proper governmental tort investigator places on notice the proper recipient under the statute, even though the tort investigator may be employed by a local city and the proper recipient under the plain words of the LGTCA is a county solicitor or attorney. *But see Ransom v. Leopold*, 183 Md.App. 570, 584, 962 A.2d 1025, 1033 (2008) ( [T]he relationship between the person or entity in fact notified and the person or entity that *the statute requires be notified* [is] so close, with respect to the handling of tort claims, that notice to one effectively constituted notice to the other." (emphasis added)).

This occurrence—a plaintiff with a claim against a municipality, but required to notify, at least by the plain words of the statute, a county government official—was not unprecedented in the 2007 version of the LGTCA. As explained in footnote 4 *supra*, the statute organized counties into groups and stated that "[i]n" those groups, plaintiffs should provide notice to a certain *county* entity.

In the present case, the party to whom Hansen provided actual notice, the City Administrator, "ha[s] no role in handling tort claims...." *Hansen,* 193 Md.App. at 98 n. 6, 996 A.2d at 893 n. 6. Section 402 of the Laurel Code lists the powers and duties of the City Administrator:

Under the authority and supervision of the mayor, the city administrator shall have the authority and shall be required to:

(a) Budget. Prepare at the request of the mayor an annual budget to be submitted by the mayor to the city council.

(b) Employees. Exercise direction over and have charge of all city employees, and all city working forces.

(c) Same; employment. Hire and discharge, subject to the approval of the mayor, all city employees and all city working forces.

(d) Public works. Have and exercise direct charge of all public work of the city.

*Norouzi,* 371 Md. 154, 807 A.2d 632 (2002) (finding substantial compliance where the plaintiffs expressed little intent to sue, but provided information regarding the incident to the party responsible for investigation tort claims on behalf of the local government). *But see Chappelle v. McCarter,* 162 Md.App. 163, 171–72, 873 A.2d 458, 462 (2005) (discerning a lack of substantial compliance, in part, because plaintiff's workers' compensation claim did not constitute seemingly "notice of a claim for unliquidated damages, . . . [as] required by CJ § 5–304(a)").

---

> (e) Contract work.  Oversee and inspect all work performed under contract.
> (f) Property. Be custodian of the general property, of all kinds, of the city, and be responsible for its care and use and upkeep.
> (g) Other duties.  Do such other things in relation to the administrative affairs of the city as the mayor may require.
> (h) Supervision. Supervise all department heads who shall report to and shall be under the direct supervision of the city administrator.

"Noticeably absent from this list," the Court of Special Appeals observed, "are any duties pertaining to the investigation, advisement, or resolution of . . . matters" legal or otherwise. *Hansen,* 193 Md.App. at 97, 996 A.2d at 892.  These duties, instead, "undoubtedly fall under the purview of the City Solicitor." *Id.* Section 420 of the Laurel Code states that "[t]he mayor shall appoint a city solicitor . . . who shall be the legal representative of the mayor and city council of Laurel."

Citing documents not presented to the Circuit Court, Hansen points out to us that, at the time he undertook to deliver notice to the City Administrator, the City Solicitor was not a full-time government employee, but works as "a principal in a private law firm . . . ." We would not consider this relevant, however, as to whether the City Solicitor handles tort claims on behalf of the City. Moreover, Hansen draws our attention to the City's 2010 fiscal year budget, which states that "[i]n addition to the day-to-day management of the City government, the City Administrator is responsible for insurance management, budget preparation and administration, Capital Improvement Budget Preparation, emergency operations and other projects as assigned by the Major." Hansen stresses that the City Administrator is "responsible for insurance management" and, as is also reflected in the budget, serves on the "City Risk Management Committee."

With due regard for our obligation to draw all possible reasonable inferences against the moving party (the City), Hansen's information depicts only the City Administrator's *supervisory* role in managing the City's amount and type of insurance coverage and current risk levels. This does not a claims investigator make, pursuant to *Moore.*

In sum, then, the LGTCA creates a procedural obligation that a plaintiff must meet in filing a tort action. A plaintiff must not only satisfy the notice requirement strictly or substantially, but also plead such satisfaction in his/ her complaint. If a plaintiff omits this step, he or she is subject to a motion to dismiss, for instance, based on a failure to state a claim upon which relief can be granted. *See* § 2–322(b). That is the case here essentially. Although Hansen draws our attention to some concerning and worthwhile issues, sounding in discrimination and ethics, he did not abide the procedural requirements of the LGTCA that would allow the asserted merits of his complaint to reach the eyes and ears of a fact finder.[15, 16]

---

**15.** We observe that Hansen named only the City as a defendant, rather than an employee of the City. In the complaint, he provides that the "Defendant [is] the City of Laurel, Maryland, located in Prince George's County, Maryland" and, "by code[,] subjects itself to Prince George's County's anti-discrimination ordinance." As demonstrated in footnote 5 *supra*, where a local government retains its immunity as to a particular claim, a plaintiff may not name singularly the immune local government as a defendant, but rather should name the tortfeasor-employee. *See Maynard*, 359 Md. at 394, 754 A.2d at 388.

Whether naming an immunized defendant is a jurisdictional defect remains open. *See* Rule 8–131(a) ("The issues of jurisdiction of the trial court over the subject matter ... may be raised in and decided by the appellate court whether or not raised in and decided by the trial court."); *Ferguson v. Ga–Na Den Too Apts.*, 2000 WL 1475729, at *4, 2000 Conn.Super. LEXIS 2518, at *13–14 (Conn.Super.Ct. Sept. 20, 2000) ("[S]uing the wrong party, *unless that party is a statutorily mandated party*, is not a jurisdictional defect." (emphasis added)).

Whether the City retained its immunity to such employment discrimination claims is open as well. Hansen suggests that the City "subjects itself" to liability through § 1–7.1 of its municipal code, which reads: "The city hereby elects to exempt itself from all legislation of the county for which the city has a grant of legislative authority provided by public general law or by its charter, except for," among other provisions of the Prince George's County Code, "Division 12[,] Human Relations Commission." In turn, Division 12 of the Prince George's County Code provides, in pertinent part, that:

(a) It shall be a function of the County government to foster and encourage the growth and development of the County in such a manner that all persons shall have an equal opportunity to pursue their lives free of discrimination. . . .

(b) The County government shall direct its efforts and resources toward eliminating discriminatory practices within the County in the areas of ... employment....

Aside from this language, no provision in the City's municipal code appears to reflect a waiver of immunity. Whether the City's allusion to Division 12 constitutes an actual and *clear* waiver of government immunity, or, rather, a general pledge to help "foster" a future "free of discrimination," remains an open question. *See DiPino*, 354 Md. at 47–48, 729 A.2d at 369 (1999) ("[U]nless its immunity is legislatively waived, a local government is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity."); *Nam*, 127 Md.App. at 184, 732 A.2d at 363 ("A legislative waiver of immunity by a municipality is ineffective unless its legislature has *clearly* stated an intention to waive immunity and either there are funds available for satisfying the judgment or the defendant has the power to raise funds for that specific purpose." (emphasis added) (citation omitted)). Observe that Prince George's County repealed its general waiver of immunity in 2002 because Section 2 of the LGTCA—which reads "any provision ... which is inconsistent with ... this Act is repealed," *see* Chapter 594, § 2 of the Acts of 1987—rendered the waiver "obsolete...." CB–71–2002, 2002 Leg. Sess. (Prince George's County 2002); *see* Editor's Note, PRINCE GEORGE'S COUNTY, MD, § 1013 (2002) ("Section 2 of th[e LGTCA] previously repealed this provision.").

Perhaps the better argument is that the General Assembly is empowered to and did waive any immunity possessed by the City, under Art. 49B, § 42, with respect to employment discrimination claims. *See Godwin v. County Comm'rs of St. Mary's County*, 256 Md. 326, 334, 260 A.2d 295, 299 (1970) ("[T]he doctrine of sovereign immunity is not only applicable to the State ... but ... also ... to its agencies and instrumentalities, including its municipal political sub-divisions ... unless the General Assembly either directly or by necessary implication has waived the immunity."). In *Washington Suburban Sanitary Commission v. Phillips*, 413 Md. 606, 994 A.2d 411 (2010), we considered whether three plaintiffs could sue the Washington Suburban Sanitary Commission ("WSSC") under Art. 49B, § 42, which provides only a right to sue the "person" who inflicted the discriminatory injury. Without addressing specifically the issue of immunity, we held that the Legislature intended that Art. 49B subject "county and local government entities," like the WSSC, but not the State, to private, direct suit. *See Phillips*, 413 Md. at 638, 994 A.2d at 430.

Although the issues of jurisdiction and waiver of immunity are sufficiently complex to warrant mention, we offer no analysis here because of the pleading defect in the present case.

16. The Dissent critiques this opinion as "another step towards a 'gotcha jurisprudence' which makes unreasonable demands of technical precision." Dissenting op. at 697, 25 A.3d at 139. Its conclusion is premised on the notion that Hansen was not granted "leave to amend his complaint, even though he made *good-faith attempts* to comply with the notice requirement and alleges in a *responsive pleading* that he has complied with the condition precedent at issue." *Id.* (emphasis added).

First, we do not agree that Hansen made good-faith attempts to comply with the notice requirement of the LGTCA. At no time, aside from his opposition to the City's motion to dismiss, did Hansen even mention "conditions precedent" or the "LGTCA," let alone try to comply with them. Rule 2–304(b) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."). Indeed, his complaint and the "exhibits" attached to his opposition motion expressed merely a desire to pursue administrative relief. Logically, one cannot try to comply (even generally or in good-faith) with a requirement of which one is not even aware apparently.

Second, the Dissent seems to argue that Hansen satisfied the LGTCA notice requirement, just in a responsive pleading, as opposed to his complaint. The Dissent goes on to say, however, that it "do[es] not contest th[e] pleading requirement" that "[a] plaintiff must allege his fulfillment of [conditions precedent to a cause of action] in his complaint." Dissenting op. at 699, 25 A.3d at 140. For present purposes, we assume the Dissent, in fact, does contest the principle that a plaintiff must plead satisfaction of the LGTCA in his/ her/ its complaint.

As stated above, Maryland appellate caselaw states that conditions precedent must be pleaded normally in a complaint, and that the LGTCA notice requirement is one such condition precedent. *See* Part II.B; *see also* Rule 2–305 ("A pleading that sets forth a claim for relief . . . shall contain a clear statement of the facts necessary to constitute a cause of action. . . . "); *Waddell*, 331 Md. at 59, 626 A.2d at 356 (1993) (defining "condition precedent" as "a condition attached to the right to sue at all"); *Rios v. Montgomery County*, 386 Md. 104, 127, 872 A.2d 1, 14 (2005) (stating that "the LGTCA notice requirements are a condition precedent"); *Neuenschwander v. Washington Suburban Sanitary Comm'n*, 187 Md. 67, 76, 48 A.2d 593, 599 (1946) (holding in a local government tort case that a "declaration," which was a complaint, "must allege that the notice prescribed by the statute was duly presented, for the notice is a condition precedent to the right to maintain the suit"); *Smith v. Danielczyk*, 400 Md. 98, 112, 928 A.2d 795, 803–04 (2007) (describing an argument that "compliance with th[e LGTCA requirement] must be alleged in the complaint" and responding that "the complaint . . . provided all of the information required to be contained in the notice").

Even if a plaintiff may plead satisfaction of the LGTCA notice requirement just as well in a responsive pleading (perhaps in a reply to an answer), Hansen did not do so. An opposition to a motion to dismiss is not a pleading. The Maryland Rules defines "[p]leading" as "a complaint, a counterclaim, a cross-claim, a third-party complaint, an answer, an answer to a counterclaim, cross-claim, or third-party complaint, a reply to an answer, or a charging document as used in Title 4." Rule 1–202(t). Motions, urging a court either to take or refrain from taking a certain action, are not included. As further indication of this separate treatment, the Rules describe pleadings and motions in different sections, detailing the requirements for pleadings in Rules 2–302 through 2–305 and motions in Rule 2–311. Perhaps more importantly, the Rules make clear that a motion to dismiss on the grounds of failure to state a claim is not a "pleading," i.e., an answer, but a motion. Rule

**JUDGMENT OF THE COURT OF SPECIAL APPEALS
AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

ADKINS, J., Dissents.

ADKINS, J., dissenting.

I respectfully dissent from the majority opinion, which throws a plaintiff out of court, permanently, for failure to allege in his complaint that "all conditions precedent have been performed." *See* Md. Rule 2–304(b). It does so without allowing him leave to amend his complaint, even though he made good-faith attempts to comply with the notice requirement and alleges in a responsive pleading that he has complied with the condition precedent at issue. This result, I fear, is another step towards a "gotcha jurisprudence" which makes unreasonable demands of "lawyers in the trenches."

---

2–322(b) ("The defense ... of failure to state a claim upon which relief can be granted" may be made "by [a] motion to dismiss filed *before the answer* .... " (emphasis added)). In the present case, Hansen filed a complaint or an "original pleading," Rule 1–202(r), and, *before filing an answer*, the City filed a motion to dismiss on the grounds of failure to state a claim. Hansen's opposition, therefore, was a responsive *motion*, not a responsive *pleading*.

In short, after receiving notice of the deficiencies in his pleadings, Hansen did not amend his complaint or voluntarily dismiss and refile his complaint. Nor did he, after the trial court granted the City's motion to dismiss, seek leave to file an amended complaint. Moreover, his chosen form of response did not allege that he, in fact, plead compliance with the LGTCA notice requirement. Instead, in the words of the Court of Special Appeals,

He did not address the alleged deficiencies in his complaint. Rather, he characterized the City's motion as "assert[ing] [that] the City ... [had] not receive[d] notice within the statutory 180 days after the actual injury that any claims were pending against it with relation to [Hansen's] employment termination." He responded that [the City's] argument was "without factual foundation" ....

*Hansen*, 193 Md.App. at 85–86, 996 A.2d at 886.

In light of these facts, we are not compelled to remand with leave to amend. We grant that statutory notice provisions and the Maryland Rules should not be construed so as to perform a manifest injustice on a litigant. In some circumstances, however, non-observance of these legal rules should have consequences; otherwise they are not rules at all.

*See Smith v. Kent County Comm'rs,* 418 Md. 692, 742, 18 A.3d 16, 40 (2011) (Adkins, J., dissenting).

## I.

The majority avoids consideration of whether Hansen substantially complied with the notice requirement of the LGTCA by sending his letter to the City Administrator and Deputy City Administrator within the 180 daywindow,[1] preferring instead to impose a strict pleading requirement regarding that notice, and rejecting Hansen's efforts to bring his pleading into compliance by proving his delivery of notice. *See* Maj. Op. at 678, 683–85, 25 A.3d at 127, 130–31.

To be sure, Hansen, in his complaint, failed to include an allegation that he gave the City notice within 180 days. But, as soon as the City filed its Motion to Dismiss, Hansen filed "Plaintiff's Opposition to Defendant's Motion To Dismiss." In his Opposition, Hansen alleged that "[o]n March 12, 2007, [he], through his counsel, delivered by hand to the Office of the City Administrator a comprehensive letter, detailing the types of claims pending against the City, the factual basis for the claims, and an offer to resolve this matter privately." Hansen also asserted that the Prince George's County Human Relations Commission sent to the City Administrator a "Notice of Charge of Discrimination," along with a copy of his filing with the Commission. Attached to Hansen's Opposition motion was a copy of his detailed letter setting forth the alleged discrimination, and his injury, which, he alleges, was timely hand-delivered to Ms. Mills. With this Opposition, Hansen clearly alleged, although not in his complaint, that within 180 days of his termination, he had given the City Administrator notice of his claim.[2]

---

1. As the majority acknowledges, there is no dispute that Plaintiff sent a letter to the City Administrator and Deputy City Administrator "show[ing] that Hansen had notified the City Administrator of his discrimination claim within the 180–day window." Maj. Op. at 674, 25 A.3d at 125. It declines, however, to decide whether Hansen's notice constituted compliance or substantial compliance with Section 5–304 of the LGTCA.

2. Here, all Hansen was required to do was allege generally that "all conditions precedent have been performed or have occurred." *See*

The majority cites various cases to support its holding that where there are conditions precedent to a cause of action, the plaintiff must allege his fulfillment of those in his complaint. I do not contest this pleading requirement. But what the majority ignores is that in the vast majority of cases addressing this issue, the plaintiff is given leave to amend his complaint to include such allegation, either at the trial or appellate level. The first case cited by the majority, *Cannon v. McKen,* 296 Md. 27, 37–38, 459 A.2d 196, 202 (1983), when this Court held the complaint was properly dismissed for failure to allege compliance with a condition precedent, it directed that the case be remanded to allow the defendant to amend her pleadings. *See Cannon,* 296 Md. at 38, 459 A.2d at 202 ("Accordingly, we shall remand this case to the Circuit Court for Prince George's County under Rule 871 for further proceedings as necessary to allow the plaintiffs to plead facts which show whether or not their claim falls within the Act."). In the second case cited, a medical malpractice action, we remanded the action to the Health Claims Arbitration Office, but "[i]n all fairness, the tort case in the circuit court must be kept alive pending the outcome of the arbitration proceedings to prevent the running of limitations." *Jewell v. Malamet,* 322 Md. 262, 276, 587 A.2d 474, 481 (1991). No similar fairness consideration was given to the plaintiff, Hansen, although in his brief to this Court he requested leave to amend his complaint.

The Majority only cites two cases in which this Court dismissed a suit without granting leave to amend. *See Neuenschwander v. Washington Suburban Sanitary Comm.,* 187 Md. 67, 48 A.2d 593 (1946); *Engle v. Cumberland,* 180 Md. 465, 25 A.2d 446, (1942). Both of these cases, however, are from the 1940s, and do not even address the issue of whether a party should be entitled to leave to amend.

---

Maryland Rule 2–304(b) ("In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred.").

Indeed, as we said in *Hall v. Barlow, Corp.,* 255 Md. 28, 255 A.2d 873 (1969), and often since, the modern trend is to freely allow amendments in the interests of justice:

It is well settled that the allowance of leave to amend is within the sound discretion of the trial court and that we will not disturb the lower court's ruling unless it has clearly abused its discretion.

As Judge Oppenheimer, for the Court, stated in *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 61, 225 A.2d 294, 300 (1966): "We have repeatedly held that an order denying or allowing an amendment will not be reversed in the absence of a clear showing of an abuse of discretion." (citing prior Maryland cases)

It is also well settled that amendments are to be fully allowed to the end that cases will be tried on their merits rather than upon the niceties of pleading. Maryland Rule 320 d 1(b) expressly provides, in part, that "An amendment shall not be made without leave of court but leave to amend shall be freely granted in order to provide justice." (Emphasis supplied.)

As Judge Horney, for the Court aptly stated in *Standard American Homes, Inc. v. Pasadena Building Co.,* 218 Md. 619, 624–25, 147 A.2d 729, 732–33 (1959):

Whenever a demurrer to a bill or other pleading is sustained, an amendment may be allowed by the court in its order sustaining the demurrer without the necessity of a motion or petition therefor, but whether an amendment shall be allowed is always within the sound discretion of the court. Maryland Rule 320 d 1(e). However, if seasonable application is made therefor, a court will ordinarily grant leave to amend at any time before a final order is entered so that a case may be tried on its merits. Rule 320 a 1, 320 c 1, 320 d 1(b).

This represents the trend of the modern cases. *See, e.g., Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Matsumato v. Arizona Sand and Rock Co.,* 80 Ariz. 232, 295 P.2d 850, 56 A.L.R.2d 1385 (1956); *Norway Water*

*Dist. v. Norway Water Co.,* 139 Me. 311, 30 A.2d 601 (1943); *Kleinknecht v. McNulty,* 169 Neb. 470, 100 N.W.2d 77 (1959); *Weiler v. Ross,* 80 Nev. 380, 395 P.2d 323 (1964); *Hermes v. Markham,* 78 N.D. 268, 49 N.W.2d 238 (1951); *City Electrical Service & Equipment Co. v. Estey Organ Co.,* 116 Vt. 435, 77 A.2d 835 (1951). *See, generally,* 3 Moore, Federal Practice para. 15.08[2] (2d Ed. 1968).

*Hall,* 255 Md. at 39–42, 255 A.2d at 878–79.

We have continued to adhere to *Hall's* preference for granting leave to amend. *See, e.g., RRC Northeast, LLC v. BAA Md., Inc.,* 413 Md. 638, 674, 994 A.2d 430, 451–52 (2010) (Harrell, J., for the Court) (citing *Hall* for the proposition that "it is the rare situation in which a court should not grant leave to amend[.]"). The policy goal behind our liberal amendment policy is to have cases decided on the merits. *See Crowe v. Houseworth,* 272 Md. 481, 485, 325 A.2d 592, 595 (1974) ("We have said that amendments should be freely allowed in order to promote justice, ... so that cases will be tried on their merits rather than upon the niceties of pleading[.]"). *See also McMahon v. Piazze,* 162 Md.App. 588, 599, 875 A.2d 807, 813 (2005) ("The general rule is that amendment should be allowed liberally.").

On this same point, the Seventh Circuit has explained the federal policy against dismissal with prejudice on a failure to meet a technical pleading requirement:

In *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, the Supreme Court set out the general policy of the federal courts favoring liberal construction of pleadings. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 48, 78 S.Ct. 99. Professors Wright and Miller have similarly commented: dismissal under Rule 12(b)(6) generally is not on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal policy of deciding cases on the basis of the

substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading ... Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.

Wright & Miller, Federal Practice & Procedure § 1357, at 611–613. *See also Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir.1985); *Friedlander v. Nims,* 755 F.2d 810, 813 (11th Cir.1985); *Micklus v. Greer,* 705 F.2d 314, 317 n. 3 (8th Cir.1983); *Jureczki v. City of Seabrook,* 668 F.2d 851, 854 (5th Cir.1982) (dismissal with prejudice is a drastic remedy to be used only where a lesser sanction would not better serve the interests of justice).

*Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 609–610 (7th Cir.1987)

Certainly, the rules of procedure must be followed. But, we are here to administer justice, and doing so requires temperate, not harsh, administration of rules. Regardless of the merits of this one case, we should demonstrate in our decision-making that we maintain a high decree of appreciation for the fact that rules of procedure are a mechanism for achieving fair results across the board, but that they are only a mechanism, not traps for good faith pleaders. We are not here to fix lawyer's mistakes, but by the same token, I firmly believe that when a party or his lawyer has made a timely, good faith effort to respond to a motion to dismiss by making additional written allegations that address the deficiency that is highlighted by the motion, dismissal without leave to amend is not the just result.

The majority even goes so far as to suggest that had Hansen included in his complaint an allegation that he mailed the letter, describing its contents, it would be deficient because he said he was filing his claim of discrimination with the appropriate administrative agencies, not that he was filing suit. In its words, "The three documents attached to Hansen's opposition to the City's motion to dismiss expressed his intent to file claims with 'local and federal administrative

agencies,' to wit, the Prince George's County Human Rights Commission and the U.S. Equal Employment Opportunity Commission. The documents did not reflect expressly an intent to file a complaint or claim in the Circuit Court for Prince George's County or any other court." Maj. Op. at 675, 25 A.3d at 125. The purpose of the notice requirement of the LGTCA is simply to enable the local government to perform a timely investigation and plan for contingent financial liabilities. It is pretty obvious that when a person hand-delivers a notice of his intent to file a discrimination claim against a city with the appropriate agencies, when exhaustion of administrative remedies is required, that ultimately, a suit against the city will follow. The majority's taking Hansen to task in this manner simply reinforces an impression that we are hostile to claimants, or that we sit here searching for imperfections that may trip up a litigant. Given the complexities of modern law and procedure, even for litigants who are represented, it is not so easy to get every technical point exactly right the first time. In pursuing such a "zero tolerance" standard, I submit that we make the practice of law, and litigation a hazardous occupation, and encourage lawyers to focus on how they may trip up their opponents on a procedural mistake rather than resolve the substance of the dispute. This trend not only warps the administration of justice, but contributes to the lack of civility and professionalism that we frequently lament. I submit that a more tolerant view is called for.

## II.

If Hansen were permitted to amend, the issue then will be: whether serving the City Administrator constitutes substantial compliance within the requirement of Md.Code, Courts & Judicial Proceedings Article ("CJ") § 5–301 that the City must be given notice within 180 days after the injury.

Although the majority chooses not to decide this issue, it takes the privilege of offering strong dictum on several of the issues subsidiary to this question. For example, the majority sets forth its views, as dictum, on how Hansen should have provided notice under the LGTCA. Maj. Op. at 674, 25 A.3d

at 124 n. 3. It pronounces: "According to the plain words of the statute, a plaintiff whose cause of action was '[i]n Prince George's County' should provide notice to 'the county solicitor or county attorney.'" *Id.*

Subpart (c) of Section 5–304 provides that '[e]xcept in ... Prince George's County, the notice shall be given ... to the county commissioner, county council, or **corporate authorities of a defendant local government[.]**" (emphasis added). It goes on to say that "in ... Prince George's County, the notice shall be given in person or by certified mail ... to the county solicitor or county attorney." Although it is clear that a litigant suing Prince George's County should not serve the relevant "corporate authorities," but instead serve the "county attorney," it is not as clear whether that exception to the LGTCA's general rule applies for all municipalities within Prince George's County, including the defendant municipality of Laurel in this case. It is just as likely that the General Assembly intended that with respect to a municipality, the notice be sent to the "corporate authorities" of that municipality rather than to the county attorney. Often towns or cities within counties do not have unified governmental functions, and sometimes a municipal government is at odds with the local county government. A better interpretation of this statute is that it was specific in identifying the recipient for the county governments, but general as to the municipalities, lumping the latter together and calling for notice to the "corporate authorities." At the very least, Section 5–304(c) is ambiguous, not "plain" as the majority declares.

So, the issue before us is whether notice to the City Administrator constitutes notice to the "corporate authorities." Without a known common usage of the term or any statutory definition, and considering that this Court has declined to define that term,[3] we should not hold that Hansen's delivery of

---

**3.** *See Moore v. Norouzi,* 371 Md. 154, 170–171, 807 A.2d 632, 642 (2002) ("Although extremely interesting ..., we will not address the petitioners' arguments [regarding] the meaning of "corporate authorities" or agency. Whatever we might decide [on that] issue, we believe

notice to the Town Administrator is deficient as a matter of law. This is especially so given past instances when, based on the factual circumstances of the plaintiff's attempts at notice, we have held that the plaintiff had "substantially complied" with the LGTCA's notice provisions. *See, e.g., Faulk v. Ewing,* 371 Md. 284, 308, 808 A.2d 1262, 1278 (2002) (holding there was "substantial compliance" when claimant against local municipality sent a notice to the municipality's insurer providing notice, because it "satisfied the underlying purpose of the notice statute."); *Moore v. Norouzi,* 371 Md. 154, 807 A.2d 632 (2002) (plaintiffs effected "substantial compliance" with LGTCA by sending notice to the defendant county's third-party claims administrator).

A claimant should not have to guess the mystery incantation that will unlock the gates to LGTCA compliance. At the very least, Hansen should have the right to conduct discovery into what happened to the letter after receipt by the Town Administrator.

For the above stated reasons, I dissent.

that reversal is mandated because the petitioners substantially complied with the notice requirements.").